483 P.2d 670

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Richard D. BARWICK, Defendant-Appellant.**

**No. 10434.**

Supreme Court of Idaho.

April 6, 1971

Owen L. Knowlton, Lewiston, for defendant-appellant.

Robert M. Robson, Atty. Gen., Martin R. Ward, Asst. Atty. Gen., Boise, Roy E. Mosman, Pros. Atty., of Nez Perce County, Lewiston, for plaintiff-respondent.

SPEAR, Justice.

This appeal raises serious questions of police procedures and the protection of the basic constitutional rights of persons suspected of having committed felonies, and presents issues of first impression in this state. Richard D. Barwick has appealed his conviction for the crime of robbery by a jury in Nez Perce County on March 21, 1969.

The complaining witness, William L. Matlock, testified that he arrived in the City of Lewiston on the 23rd day of June, 1968. Upon his arrival in the City of Lewiston, Mr. Matlock stopped at the Long Branch Saloon, played a couple of games of pool and drank some beer before leaving for his camper, which was parked in Kiwanis Park. While in the Long Branch Saloon, he observed Barwick whom he recognized as a person with whom he had discussed the possibility of trading his pickup and camper for a trailerhouse and $600 cash difference.

After playing two games of pool and drinking two beers, Matlock left the Long Branch Saloon and drove immediately to the Kiwanis Park in Lewiston, where his pickup and camper were parked. Upon arriving at his camper, he took his extension cord, plugged it into the power pole and came around to the side of his camper to plug it into his camper and at that time was attacked by two persons. Matlock was struck to the ground, jumped on and choked by one of the assailants whom he positively identified to be the appellant. Barwick allegedly let him up for some air and Matlock told him to take his money but not to kill him. Barwick allegedly told Matlock that if he mentioned a word to the police or anybody, he would kill him. The other assailant ripped the button off Mr. Matlock's left hip pants pocket and removed his wallet and then both assailants ran away. Matlock, after pursuing the assailants for a short distance, got in his car and drove immediately to the police station, arriving at the station at approximately 1:20 a. m.

Officers Ayars and Bartlett listened to Matlock's description of what happened, then went to their patrol cars and converged on the area around Kiwanis Park. Officer Ayars observed the appellant's vehicle traveling east on 25th Avenue approaching the 8th Street grade and that the left front tire was flat. As the appellant's vehicle pulled onto the 8th Street grade, it accelerated rapidly for approximately fifty yards and then slowed down. Officer Ayars continued to follow the appellant's vehicle until the radio airways cleared, at which time he radioed Officer Jabbora that he had spotted a suspect vehicle and requested assistance. When the vehicle reached 5th and Preston, Officer Ayars turned on the patrol car's red light and siren and stopped appellant's vehicle.

Officer Ayars stayed in his vehicle awaiting the arrival of Officer Jabbora to assist him but appellant got out of his car and walked back to the patrol car. Officer Ayars asked Barwick for his driver's license, shined a flashlight on his hands and wallet in order to help him find it, and at this time noticed what appeared to be blood on appellant's hands. Officer Ayars then placed appellant and his companion under arrest on the charge of vagrancy.

After placing the two suspects under arrest on the charge of vagrancy, the State maintains Officer Ayars advised them that they did not have to talk unless they wanted to and that anything they did say would be used against them later in the court of law, that they had a right to an attorney, and if they could not afford an attorney, one would be provided for them, and that they could call an attorney as soon as they got to the police station and have him present during all questioning. Officer Ayars testified that he asked appellant and his companion if they understood and ap-

pellant nodded his head in the affirmative. This is the only evidence the State put on in an attempt to show that the *Miranda* warnings were given and were knowingly and intelligently waived. I.C. § 19–853.

After the arrest on the charge of vagrancy, Officer Ayars asked Barwick if it was all right for him to search his car and appellant consented. After receiving the consent, Officer Ayars searched the interior of the car and then asked the appellant where the keys to the car were so he could get into the trunk. Appellant replied that the keys were located under the floor mat on the driver's side of the front seat.

Appellant and his companion were then transported to the Lewiston City Police Station where they were booked for vagrancy and their property was removed and inventoried. Appellant's billfold contained $249.20 and this amount was made up of one $100 bill and several twenties and other currency. Barwick was asked at this time where he had come by the $100 bill and he replied that he didn't know. Appellant's companion also was in possession of a $100 bill and when asked where he came by it, he said "I can't tell you."

At daylight, Officers Ayars, Jabbora, and Bartlett went to Carroll Drive and found the track of an automobile made by the rim of a flat tire. Following the track, the officers searched the weeds along the roadside and found various papers with the name of William Matlock on them and a leather billford. The officers then followed this track from the place the papers and wallet were found to the appellant's automobile where it had been stopped by Officer Ayars early that same morning. Appellant was released on bond and was not arrested on the robbery charge until three days later.

Appellant was brought to trial for the crime of robbery in the district court. He was convicted by a jury on March 21, 1969.

On appeal, appellant asserts that the arrest on the vagrancy charge when he was in fact a robbery suspect was illegal. Since much of the evidence obtained was the product of an illegal arrest, appellant insists that it should have been suppressed and not admitted at trial. Appellant also challenges the admission of evidence obtained as a result of the searches when he had been given the *Miranda* warnings upon the vagrancy charge at a time in which he was in fact a robbery suspect. Error is also assigned by the trial court's admitting in evidence a record of a prior conviction which had been set aside and also the court's allowing the jury to pass on the legal effect of this prior conviction.

A study of the facts of appellant's arrest for vagrancy and the events prior thereto convinces us that the arrest was merely a sham for the officers' real purpose which was to gather evidence in their investigation of the robbery. No evidence whatever appears in the record which would even hint at there being any probable cause for this arrest and the state so concedes in its brief. Appellant testified that when he was told he was being arrested for vagrancy, he then informed Officer Ayars that he was employed, he had a home, and had money with him at the time and this was corroborated by the officer. Furthermore, the search in the police station revealed that each suspect indeed did have a substantial amount of cash with him, yet they were booked on the vagrancy charge. While the discovery of a large amount of cash might have further increased suspicions entertained by the police of appellant's involvement in the robbery, it certainly must have negated any lingering notion that there was any substance whatever to the vagrancy charge. I.C. § 18–7101 defines the elements of the crime of vagrancy.[1] Undeniably, appellant who was

1. 18–7101 Vagrancy defined—Penalties.— Every person without visible means of living, who has the physical ability to work, and who does not for the space of ten days seek employment, nor labor when employment is offered him; every healthy

employed, has a home, and was carrying more than a minimum of cash, does not fit into any of the categories listed. The arrest for vagrancy was without probable cause or evidence to support it and was therefore illegal. Where an arrest is made solely for the purpose of discovering evidence to support another charge, such arrest is a sham and is illegal and any evidence obtained as a result must be suppressed. Mills v. Wainwright, 415 F.2d 787 (5th Cir. 1969); Taglavore v. United States, 291 F.2d 262 (9th Cir. 1961); State v. Williams, 248 Or. 85, 432 P.2d 679 (1967); State v. Michaels, 60 Wash.2d 638, 374 P.2d 989 (1962). This conclusion obtains regarding any statements made by appellant and evidence which was removed from appellant's person in the police station as well as any discovered when he was initially arrested because at the station he was still under arrest only for vagrancy and was booked only on that charge. Activity such as this by the police is entirely inimical to basic constitutional standards for arrest and search and simply cannot be countenanced.

■ At the time of the initial arrest, appellant consented to the search of his automobile. Generally where a person has consented to a search this removes a later objection that it was conducted without warrant. However, where the consent and search are accompanied by an illegal arrest, the events are so intertwined, one with the other, that the consent does not expunge the taint of the illegal arrest. People v. Johnson, 68 Cal.2d 629, 68 Cal.Rptr. 441, 440 P.2d 921 (1968); People v. Haven, 59 Cal.2d 713, 31 Cal.Rptr. 47, 381 P.2d 927 (1963); cf. People v. Henry, 65 Cal.2d 842, 56 Cal.Rptr. 485, 423 P.2d 557 (1967).

Since the search and the prior consent here were associated with an illegal arrest, the search was also illegal and none of the evidence discovered should have been admitted.

■ The state contends that evidence obtained as a result of conversations between appellant and the police were properly admitted since appellant was given the *Miranda* warnings. Even though there may have been a waiver by appellant, we do not believe that his waiver meets the standard of knowledgeable, intelligent action demanded by *Miranda*. The rights which *Miranda* sought to protect are so fundamental that we cannot lightly apply its requirements and find a waiver from any words or conduct which indicate acquiescence on the part of an accused. Not only must a person know what rights are guaranteed, but he should also appreciate the circumstances under which he is being interrogated. There can be no waiver of these rights unless the accused knows the reason why he is being questioned and thus has a more complete understanding of why he should remain silent and why he might need the advice of an attorney. The right to be free from unreasonable searches and the rights more fully defined by *Miranda* are all fundamental rights guaranteed every citizen. We believe that an illegal, sham arrest taints a waiver of one's rights under *Miranda* in much the same manner as a consent to a search incident to an illegal arrest is tainted. Evidence obtained as a result of conversations between appellant and the police were also inadmissible.

■■ During the trial, the prosecuting attorney asked appellant if he had ever been convicted of a felony. He answered that he had not. Over defense counsel's

beggar who solicits alms as a business; every person who roams about from place to place without any lawful business; every idle or dissolute person, or associate of known thieves, who wanders about the streets at late or unusual hours of the night, or who lodges in any barn, shed, shop, outhouse or place. other than such as is kept for lodging purposes, without the permission of the owner or party entitled to the possession thereof; every lewd and dissolute person who lives in and about houses of ill-fame, and every common prostitute and common drunkard, is a vagrant, and punishable by imprisonment in the county jail not exceeding ninety days.

objection a copy of a page from a Minute Book from the Criminal Court of Hillsborough County, Florida, upon which was entered the record of a Judgment and Conviction of Richard Barwick for the crime of robbery, was admitted in evidence. Also admitted in evidence were copies of an order vacating judgment and a subsequent order of nolle prosequi in the same case. Appellant assigns as error the admission in evidence of the record of judgment and conviction for robbery from Florida. I.C. § 9–1209 allows the impeachment of a witness by inquiring whether he has ever been convicted of a felony. This must be proved either by the witness' own testimony or a record of the judgment. The statute applies in both civil and criminal actions. State v. Bassett, 86 Idaho 277, 385 P.2d 246 (1963). Where a judgment has been vacated, it is a nullity and the effect is as if it had never been rendered at all. See, 21 Am.Jur.2d Criminal Law § 618 (1969); 46 Am.Jur.2d Judgments § 48 (1969); 49 C.J.S. Judgments § 265 (1947). This being the status of the record from Florida, it was error to have allowed it in evidence. Further, since the prosecutor introduced the order vacating the judgment and the nolle prosequi, he must have known that there had been no valid conviction against appellant. Putting such questions to elicit such answers, and then introducing such impeaching evidence could only have been for the purpose and effect of prejudicing appellant before the jury. This error also demands reversal.

Such disposition of these issues renders consideration of appellant's other assignments of error unnecessary.

Conviction and judgment for the crime of robbery reversed and a new trial granted to appellant.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.