549 P.2d 262

STATE of Idaho, Plaintiff-Respondent,

v.

Robert GERHARDT et al., Defendants-Appellants,

Paul Gonzales Rangel, Defendant.

No. 11928.

Supreme Court of Idaho.

April 29, 1976.

Herman E. Bedke, Burley, for defendants-appellants.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Gordon S. Nielson, Senior Deputy Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

Defendant Paul Rangel and defendants-appellants Robert Gerhardt, Victor Guzman and Raymond Rudy Vigil were tried before a jury and convicted of the robbery of Ernest Medina. All four were arrested in the early morning hours of September 13, 1974. The events of that morning follow.

At approximately 1:00 a. m., Officers Craig Dayley and Scott Dinkel of the Burley Police Department were on routine patrol when they observed two persons leave a bar in Burley and proceed to a car parked in a lot just east of the bar. Apparently their suspicions were aroused and the two officers parked their car where they continued to observe the two, later identified as appellants Gerhardt and Guzman. According to Officer Dayley, "They [Gerhardt and Guzman] walked over to the car that was parked there, and they looked like they pulled something out of the car and were doing something on the other side of the car." After about one minute appellants Gerhardt and Guzman ran down a nearby alley and the officers approached the car to investigate. They found two persons, later identified as Vigil and Rangel, beating the victim Ernest Medina. Medina was in a "semi-conscious" state.

After the officers detained Vigil and Rangel, Officer Dayley pursued Guzman and Gerhardt down the alley where they had disappeared. He found them in another parking lot, trying to start an Oldsmobile. Dayley arrested them in the vehicle and returned them to the scene of the crime. Dayley then returned to the Oldsmobile (owned by Don Guzman, a brother of defendant Victor Guzman) and searched

it, finding the wallet of the victim, Ernest Medina, under the front seat.

Following jury trial on February 19 and 20, 1975 in Fifth Judicial District Court, the defendants were found guilty. A judgment of conviction was entered on April 1, 1975 and all four defendants were committed to the State Board of Correction for a term not to exceed ten years. The district court retained 120 days jurisdiction on defendant Rangel. Defendants Gerhardt, Guzman and Vigil appeal from the verdict and judgment.

Appellants specify four errors which they claim compel a reversal of the judgment below. They contend the jury panel was unconstitutionally devoid of minority representation, particularly persons of Spanish-American background; they contend the victim's wallet, admitted as part of the state's evidence, was the fruit of an illegal search and should have been excluded; they contend the district court improperly allowed the state to use a leading question in the direct examination of a witness; and they contend there was insufficient evidence to convict any of the appellants of robbery under I.C. § 18–6501.[1] We have examined each of these assignments of error and have found that none warrants reversal for the reasons set forth below.

According to appellants the entire panel from which the trial jury was chosen was made up of "Anglo-Americans." They argue that since all the appellants are of Spanish-American or Chicano backgrounds a jury that did not include persons with a similar ethnic background could not be impartial as required by the Sixth Amendment. While they concede that the jury was selected in accordance with the Uniform Jury Selection and Service Act, I.C. § 2–201 et seq., they assert that this act is unconstitutional because it makes no provision for the affirmative placement of minorities on the panel.

A criminal defendant has no constitutional right to a jury with some mem-

1. "18–6501. Robbery defined.—Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

bers or even a single member of his or her race thereon. *See* 47 Am.Jur.2d *Jury* § 176 (1969). In *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), the United States Supreme Court explained:

"All that the Constitution forbids, however, is systematic exclusion of identifiable segments of the community from jury panels and from the juries ultimately drawn from those panels; a defendant may not, for example, challenge the makeup of a jury merely because no members of his race are on the jury, but must prove that his race has been systematically excluded." 406 U.S. at 413, 92 S.Ct. at 1634.

*See* Annot., 33 L.Ed.2d 783, § 3d (1973). There has been no showing here of any such systematic exclusion. Absent such a showing we find that the panel meets constitutional standards.

■ Appellants next contend that the wallet seized by Officer Dayley in his search of the Oldsmobile was the fruit of an illegal search and was improperly admitted at trial. They concede their objection was not raised prior to trial as required by I.C.R. 12(b)(3) which provides:

"(b) *Pretrial Motions.* Any defense, objection or request which is capable of determination without trial of the general issue may be raised before the trial by motion. The following must be raised prior to trial:

\*   \*   \*   \*   \*   \*

"(3) motions to suppress evidence on the ground that it was illegally obtained; or \*   \*   \*."

Appellants contend, however, that trial counsel had no opportunity to make the motion to suppress prior to the time that the facts became available to him at trial. Consequently they urge us to disregard these "procedural technicalities and niceties."

I.C.R. 12(f) provides:

"(f) *Effect of Failure to Raise Defenses or Objections.* Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, or at the time set by the court pursuant to subsection (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver."

In *State v. Collinsworth,* 96 Idaho 910, 539 P.2d 263 (1975), the Court confronted this issue for the first time. We held:

"The question as to the timeliness of the motion to suppress made at trial is a question for the discretion of the trial court. *United States v. Maloney,* 402 F.2d 448 (1st Cir., 1968). The purpose of such a rule is to avoid 'the serious inconvenience to jurors from unnecessary disruptions of trial to deal with issues that could and should have been raised in advance'." Citing *United States v. Bennett,* 409 F.2d 888, 901 (2nd Cir. 1969).

The district court ruled that the motion was not timely. The court found that although defendants' trial counsel were not present during the preliminary hearing of this matter, knowledge of the search for and seizure of the wallet was available to them from at least three sources prior to trial: The defendants themselves, prior counsel (i. e., counsel at the preliminary hearing) and an affidavit in support of the criminal complaint available in the case file. In so ruling the district court properly exercised the discretion granted it under I.C.R. 12(f). The ready availability of the information, coupled with the purpose of the rule to avoid "unnecessary disruptions of trial to deal with issues that could and should have been raised in advance" justify the holding of the trial court.

The trial court also did not err when it failed to admonish the jury to disregard the answer to a leading question propounded by the state. Appellants complain of the following exchange, taken from the state's examination of their own witness, the victim Ernest Medina:

"Q Did you have that wallet on your person just prior to the attack that you have described?

"A Yes.

"MR. BENNETT: Again, I object to the leading nature of the question.

"MR. THOMAS: I don't think that is leading, Your Honor.

"THE COURT: It's a necessary question. It really is leading."

At the time of defendants' trial, I.C. § 9–1203, repealed by S.L., ch. 242 (1975), was in effect and provided:

"A question which suggests to the witness the answer which the examining party desires is denominated a leading or suggestive question. On direct examination leading questions are not allowed, except in the sound discretion of the court, under special circumstances, making it appear that the interests of justice require it."

The present rule, I.R.C.P. 43(b)(2) is substantially similar.

■ We note first that although the question was objected to, there was no motion to strike the answer. Generally in such a case, overruling the objection is not error, despite the leading nature of the question. *State v. Smailes*, 51 Idaho 321, 331, 5 P.2d 540 (1931).

■ At any rate, appellants have failed to point to any prejudice which might have accrued to them as a result of the question. In *McClain v. Lewiston Interstate Fair & Racing Assn.*, 17 Idaho 63, 104 P. 1015 (1909), the Court held:

"While counsel should at all times avoid the asking of leading questions and permit witnesses to state facts without any suggestion from counsel as to the answer to be given, yet such questions are within the discretion of the trial judge, and sometimes the facts can be more readily and speedily developed by asking leading questions without seriously prejudicing the rights of the party objecting thereto, in which case, where the discretion of the court is not abused, this court will not reverse a case because of leading questions." 17 Idaho at 88, 104 P. at 1024.

In the present case, the witness did not speak English and questions were asked and answered through an interpreter. The allowance by the court of the limited use of leading questions does not constitute an abuse of the trial court's discretion, particularly where, as here, there was no prejudice to the defendants.

Finally, appellants assert that the verdict of the jury against each of them was contrary to the law and evidence. In short, they claim that the state failed to prove the elements of robbery as to each one of them.

Appellants Guzman and Gerhardt contend that they did not take the victim's wallet "from his person or immediate presence" nor did they accomplish the taking "by means of force or fear" as required by I.C. § 18–6501, *supra*. Appellant Vigil, on the other hand, denies any intent to take property at all and maintains that he was merely "engaged in an altercation with Medina." All the appellants deny that they were acting in concert.

■ In the present case the information and criminal complaints charge the appellants with acting " * * * jointly and in concert and aiding and abetting each other." I.C. § 19–1430 declares that:

" * * * all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, shall hereafter be prosecuted, tried, and punished as principals, and no other facts need be alleged in any indictment against such an accessory than are required in an indictment against his principal."

Consequently, if there is evidence to show the defendants acted in concert, then the jury was justified in returning a verdict of guilty.

"The important consideration is not whether the jury find that each defendant took property from a victim, but whether the facts of the case substantiate a finding by the jury that the prop-

erty was taken by one of the appellants or another person acting in concert with appellants." *State v. Oldham*, 92 Idaho 124, 135, 438 P.2d 275, 286 (1968).

█ The evidence here is clearly sufficient to show concert of action. There was evidence to justify a jury finding that defendants Gerhardt and Guzman took Medina's wallet at the same time that Vigil and Rangel were beating him, and that they ran to another car while Vigil and Rangel continued their attack. Since all four acted in concert, the force and fear asserted by Vigil and Rangel were imputed to appellants Gerhardt and Guzman and the taking of the victim's property by Gerhardt and Guzman was imputed to appellant Vigil.

The verdict of the jury was within the evidence presented and the judgment of the district court proper. Judgment affirmed.

McFADDEN, C. J., SHEPARD and BAKES, JJ., and BEEBE, District Judge, concur.