620 P.2d 286

STATE of Idaho, Plaintiff–Respondent,

v.

Isidoro PADILLA, Defendant–Appellant.

No. 13118.

Supreme Court of Idaho.

Nov. 19, 1980.

Robert M. Kerr, Jr., of Kerr, Williams & Clarke, Blackfoot, for defendant–appellant.

David H. Leroy, Atty. Gen., Michael B. Kennedy, Deputy Atty. Gen., Boise, for plaintiff–respondent.

SHEPARD, Justice.

This is an appeal by Padilla from his conviction of involuntary manslaughter based on the accusation that he had beaten his four–year–old daughter to death. We affirm.

According to defendant's testimony, his four–year–old daughter had been ill and lapsed into unconsciousness on the evening of February 18, 1977. Defendant drove the child to a nearby hospital, but she was dead on arrival. When examination revealed bruises of varying age over a large part of her body, together with a broken arm, police officers were called.

A number of persons were assembled at the Aberdeen City Hall "to find out what caused the death of the child." In attendance were three police officers, three case workers from the Department of Health and Welfare, Padilla, his wife, their remaining child, and three or four neighbors. Questioning began at approximately 2:00 a. m., and all those present were interrogated by the police officers. A tape recording was made of that interrogation process. The interrogation lasted until 4:45 a. m.

During that time and following the delivery of *Miranda* rights, Padilla was questioned for approximately one and one–half hours. During that questioning, Padilla related that he had struck the child with a belt and she had run into a table and struck her forehead. Padilla stated that upon his return from work, he found the child unconscious, that he had revived her, but later she again lapsed into unconsciousness. Padilla indicated that his wife was at work

and that he was alone with his two children when the decedent Marisol became unconscious. He denied any knowledge of reasons for the death of Marisol. Padilla was arrested and taken into custody at 4:45 a. m., after the questioning had terminated.

An autopsy was performed, which revealed the child had died of a brain hemorrhage resulting from trauma to her forehead. Padilla was further questioned on February 20, 1977, and later charged with voluntary manslaughter. At trial, Padilla testified that he had pushed the child into a table and thought that this may have occurred on the day of her death. He also testified that some time before that date, he had pushed the child down, causing the fracture of her right arm. Following trial, the jury found Padilla guilty "of the included lesser offense of involuntary manslaughter" and he was sentenced to incarceration for a term of not to exceed ten years.

Initially, Padilla asserts that he could not be convicted of the crime of involuntary manslaughter since the information did not charge him with that crime, but rather with voluntary manslaughter. Although not articulated, Padilla's assertion approaches a due process argument suggesting that he was not sufficiently apprised in the information of the crime of which he was ultimately convicted. In that fashion, the argument here differs from those cases which have dealt with the necessity for or the prohibition of jury instructions relating to the ability to find a verdict of guilty of a "lesser included offense" as an alternative to a verdict of guilty of the offense charged in the information. Likewise, we find the assertion of defendant–appellant here different from those asserted in cases dealing with the double jeopardy aspect. *See State v. Hall*, 86 Idaho 63, 383 P.2d 602 (1963); *State v. McCormick*, 100 Idaho 111, 594 P.2d 149 (1979); *State v. Thompson*, 101 Idaho 430, 614 P.2d 970 (1980).

Rather, we believe that the issue raised here is more akin to *State v. Cariaga*, 95 Idaho 900, 523 P.2d 32 (1974). There defendant was charged with soliciting and offering to engage in sexual acts for hire and engaging in an act of prostitution. She was convicted of the crime of being a common prostitute. The Court, by Donaldson, J., held that defendant had been convicted of a crime which was not a lesser included offense of the one charged in the information.

*State v. Sanchez*, 94 Idaho 125, 483 P.2d 173 (1971), was also a child beating death case wherein the defendant was charged with the crime of voluntary manslaughter of his stepson and upon trial was found guilty "of the lesser included offense of involuntary manslaughter." Such observation was made in the preliminary recitations of the opinion without discussion thereof. *See also State v. Griffiths*, 101 Idaho 163, 610 P.2d 522 (1980). *See also State·v. Quila*, 108 Ariz. 488, 502 P.2d 525 (1972); *State v. Dixon*, 107 Ariz. 415, 489 P.2d 225 (1971); *State v. Gurule*, 84 N.M. 142, 500 P.2d 427 (N.M.App.1972).

The doctrine of lesser included offense appears to be a construct of the criminal law which permits the trier of fact to convict the defendant of an offense less serious than that charged in the accusatory pleading. There appears no question but that a defendant may be convicted of an entirely separate and distinct offense from that of which he is accused and it is not necessary that the lesser crime be a degree or variety of the more serious crime. It has been stated that a justification for the lesser included offense doctrine is fundamental fairness both to the defendant and to the prosecution. It is said to prevent the conviction of a defendant of a greater crime when he might be guilty only of a lesser offense, and on the other hand to prevent a total acquittal of a larger crime when a defendant may have committed all of the elements of a lesser crime. *See* Perkins on Criminal Law, 2d ed.; The Lesser Included Offense Doctrine in Iowa: The Gordian Knot Untied, 59 Iowa L.Rev. 684; Barnett, The Lesser Included Offense Doctrine: A Present Day Analysis For Practitioners; 5 Conn.L.Rev. 255; Submission of Lesser Crimes, 56 Colum.L.Rev. 888.

In *Walker v. United States*, 418 F.2d 1116 (D.C.Cir.1969), the court stated:

"This leads us to appellant's contention that the indictment did not give adequate notice of the charges to be met and that the variation between the indictment and the charge to the jury violates the Sixth Amendment. The indictment is, for legal purposes, sufficient notice to the defendant that he may be called to defend the lesser included charge. * * *

The Rule [Fed.R.Crim.P. 31(c)], and its legislative forebear, proceed on the premise that the overall interest of justice lies in permitting an instruction of a lesser offense 'necessarily included in the offense charged,' and permitting the prosecution to seek a verdict on that offense even though it has failed to convince the jury of some element of the greater offense named in the indictment. [Citations omitted.] It may be that actual notice of this possibility is different from the notice implied by a rule of law, but there is no injustice in requiring the defense to be sensitive about the possible legal risks involved when the defendant is implicated in elements of a 'lesser' crime by his own testimony."

As stated in *State v. Cariaga, supra*: "In addition, the charge of an offense includes in it any lesser included offenses and the accused may be acquitted of the charged offense but convicted of the lesser included offense. I.C.R. 31(c). Therefore, although appellant was not charged in the complaint of the offense of being a common prostitute, she will not have been denied due process by being convicted of a charge not made if the crime of being a common prostitute is a lesser included offense of either soliciting and offering to engage in lewd sexual acts for hire or of engaging in an act of prostitution."

In *Cariaga*, it was further stated:

"An offense will be deemed to be a lesser included offense of another, greater offense, if all the elements required to sustain a conviction of the lesser included offense are included within the elements needed to sustain a conviction of the greater offense. *Of course, the greater offense may require proof of additional elements in order to sustain a conviction. Or, if in committing an offense one necessarily commits a second offense, that second offense will be deemed a lesser included offense.*" (Emphasis added.)

Here, Padilla was charged by the information with specific acts which included the essential elements of involuntary manslaughter. The ultimate charge against Padilla was that he struck his daughter and the blow caused the child to fall, strike her head and die. Although Padilla was also charged with committing the said acts "in a sudden quarrel or heat of passion," such only constituted an additional element not necessary to the crime of involuntary manslaughter, but of course necessary to the greater crime of voluntary manslaughter. We hold that the information identifies the acts with sufficient particularity so as to bar a second prosecution for the same conduct, informed Padilla of the nature of the greater charge against him, yet stated every element necessary to constitute the lesser included offense of involuntary manslaughter and afforded him the means by which to prepare a proper defense.

Padilla next asserts that the trial court erred in denying his motion to suppress certain statements made by him during the February 19 and 20 interrogations. It will be recalled that on February 19, at about 2:00 a. m., Padilla, along with others, were questioned as to the cause of death of the child. Padilla was read his *Miranda* rights in English, and handed a printed Spanish translation of those rights. The following exchange then took place.

"(Police) Q Do you understand these rights?
(Defendant) A Yes.
Q Do you wish to have a lawyer present?
A What do I need a lawyer for? There is no lawyer here, anyway.
Q Do you wish to talk to us now?
A Well, what do you want to know?
Q Do you wish to talk to us now without a lawyer present?

A   I don't want to talk to nobody. It all depends on what the situation or what–I understand these–

Q   You understand these rights?

A   Yes.

MR. JORGENSEN: Okay.

Q   (By Mr. Barton) We would like to talk to you about your daughter. Would you be willing to talk to us about her?

A   Yes."

It is Padilla's contention that his declaration, "I don't want to talk to nobody," was an implication of his right to remain silent and that any further or additional questioning by the police thereafter was improper and evidence thereof was inadmissible at trial.

*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), set forth guidelines regarding the admissibility of statements by persons interrogated while in the custody of law enforcement officials. "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 86 S.Ct. at 1612. *Miranda* further provides that, "any statement taken after the person invokes his privilege [to remain silent] cannot be other than the product of compulsion, subtle or otherwise." *Id.* at 474, 86 S.Ct. at 1628.

We assume, without deciding, that the circumstances of the instant case resulted in a *custodial* interrogation. Nevertheless, we cannot find error in the ruling of the trial judge that Padilla did not invoke his *Miranda* right to silence. If Padilla had said only, "I don't want to talk to nobody," we might hold otherwise. However, Padilla went on in what was characterized as "in the same breath" to indicate a willingness to continue the discussion if the police provided further explanation. The police did provide further explanation. As hereinbefore indicated, that interrogation was tape recorded and portions of that tape were played at the suppression hearing. The trial judge stated that his ruling in part was based upon his listening to the tape of that interrogation.

That tape is not made a part of the record before this Court. We find no abuse of discretion in the trial court's refusal to suppress the statements made by the defendant Padilla prior to his arrest on February 19.

Padilla asserts that even if it be held that he did not assert his *Miranda* right to silence during the February 19 interrogation, his statements at both the February 19 and 20 interrogations were taken without the presence of an attorney and thus the government has the burden of showing that Padilla knowingly and intelligently waived his *Miranda* rights. We agree. Padilla claims the State did not carry that burden. We disagree.

It was stated in *Miranda* that, "[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self–incrimination and his right to obtained or appointed counsel." *Id.* at 475, 86 S.Ct. at 1628. In *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), that principle was elaborated on: "The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *Id.* at 373, 99 S.Ct. at 1757. *See also, Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

This Court has stated in *State v. Alger*, 100 Idaho 675, 603 P.2d 1009 (1979), that the question of voluntariness must be resolved by examining the totality of the circumstances surrounding the incriminating statement. Examining the totality of the circumstances surrounding the interrogation which resulted in Padilla's statements, we find the following. At the suppression hearing, the testimony indicated that Padilla could understand spoken English and read and speak the Spanish language. On February 19 and 20, Padilla was questioned in English and responded in

English. The testimony at the suppression hearing indicated Padilla understood and was relatively fluent in the English language, albeit he had only a sixth grade education. That conclusion is buttressed by Padilla's testimony at trial wherein he was examined and cross–examined at length and demonstrated no difficulty in comprehending and speaking the English language. Although the February 19 questioning took place in the early morning hours, that portion · directed at Padilla spanned only one hour and a half, during which time Padilla appeared calm and relaxed. At the February 20 interrogation, defendant signed a written waiver of his *Miranda* rights before answering any questions. An express written statement of waiver is usually strong proof of a voluntary waiver, but is not inevitably conclusive on that issue. *North Carolina v. Butler, supra.* The testimony indicated that during the February 20 interrogation, which lasted only approximately thirty minutes, there were no problems in communicating with Padilla in the English language. Padilla himself indicated that he knew the purpose of an attorney and had been represented by an attorney on prior occasions and that hence when he was advised of his right to an attorney, he knew the significance thereof. There is no evidence that Padilla's statements at either interrogation session were elicited through trickery, promises, or any coercive means. There is no indication that Padilla lacked the capacity to knowingly and intelligently waive his *Miranda* rights.

On the totality of the circumstances as shown in the record before us, we conclude that Padilla knowingly and intelligently waived his *Miranda* rights. *Compare United States v. Glover*, 596 F.2d 857 (9th Cir. 1979); *State v. Wyman*, 97 Idaho 486, 547 P.2d 531 (1976); and *State v. Dillon*, 93 Idaho 698, 471 P.2d 553 (1970), *cert. denied*, 401 U.S. 942, 91 S.Ct. 947, 28 L.Ed.2d 223 (1971), *with United States v. Hernandez*, 574 F.2d 1362 (5th Cir. 1978); *Government of Canal Zone v. Gomez*, 566 F.2d 1289 (5th Cir. 1978); and *State v. Barwick*, 94 Idaho 139, 483 P.2d 670 (1971).

Padilla also argues that his statements made during the February 19 and 20 interrogations were inadmissible because there was an unnecessarily long delay between his warrantless arrest and arraignment. A person arrested in Idaho without a warrant must be brought before a magistrate without unnecessary delay. I.C. § 19–615. A statement taken from a defendant during an "unnecessary delay" may be inadmissible at trial. *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). It is clear, however, that such delay will only be one factor in determining whether the statement is involuntary and hence inadmissible. *State v. Wyman, supra.*

The statements elicited during the February 19 interrogation were made before Padilla was arrested and thus any possible unnecessary delay in his arraignment would not affect the admissibility of those statements. *See Mallory v. United States, supra; Mathies v. United States*, 374 F.2d 312 (D.C.Cir.1967); *State v. Sandoval*, 92 Idaho 853, 452 P.2d 350 (1969). As to the February 20 statements, we again note the questioning lasted approximately thirty minutes and we find no evidence of any coercion, physical or mental. Hence, as in *State v. Wyman, supra*, while we recognize the importance of speedy arraignment, we nevertheless find that the delay in arraignment involved "none of the 'third degree' tactics that are the target of the 'McNabb–Mallory' rule." *Id.* at 492, 547 P.2d at 537. We find no error.

Padilla next assigns as error the overruling of his objections to certain testimony given at trial by a social worker. The witness was before the court and subject to full cross–examination. Her testimony was not hearsay and the weight to be attached to the survey results was a matter for the jury. *See McCormick, The Law of Evidence § 249 (2d ed. 1972). Further, we note that the error, if any, could be only harmless. According to the witness, the survey

results could have been nothing but inconclusive since, as she stated, "no one knew the Padilla family lived in that area. They had not seen them at all."

Padilla next asserts that the trial judge erred in allowing into evidence various photographs and an x–ray depicting the physical condition of the deceased child's body soon after she died. It is argued that the exhibits were irrelevant and served only to inflame the jury. We disagree.

■ The general rule regarding the admissibility of such exhibits was set forth in *State v. Martinez*, 92 Idaho 183, 439 P.2d 691 (1968):

"[P]hotographs of the victim in a prosecution for homicide, duly verified and shown by extrinsic evidence to be faithful reproductions of the victim at the time in question are, in the discretion of the trial court, admissible in evidence as an aid to the jury at arriving at a fair understanding of the evidence, proof of the *corpus delicti*, extent of injury, condition and identification of the body, or for their bearing on the question of the degree or atrociousness of the crime, even though such photographs may have the additional effect of tending to excite the emotions of the jury." *Id.* at 188, 439 P.2d at 696. *See also State v. Needs*, 99 Idaho 883, 591 P.2d 130 (1979); *State v. Dillon, supra.*

■ The photographs and x–ray were authenticated as being true representations of the condition of the decedent's body. The x–ray showed that the child had a broken arm at the time of her death and the photographs depict the bruises existing over portions of her body. The testimony indicated that Padilla had struck the child on numerous occasions and had broken her right arm. The photographs and x–ray indicated the extent of Padilla's treatment of his child and thus were probative as to whether it was likely that Padilla had caused the specific forehead trauma which resulted in death. We find no abuse of discretion in the admission of those exhibits.

■ Appellant next asserts that the trial judge made certain prejudicial statements during the course of the trial and such constituted prejudicial error. We have examined each of the remarks as demonstrated in the record and find that each and all of them were well within the broad discretion of the trial judge in handling the difficult task of making a trial run fairly and expeditiously. None of the remarks rose to the level of a comment on the weight of the evidence or an opinion of the court as to the guilt or innocence of the defendant and did not ridicule counsel or reflect upon his conduct in handling the case. We find no error.

■ Likewise, Padilla argues that the prosecutor indulged in references which were inflammatory and unsupported by the evidence. We have examined the statements made by the prosecutor and find his references were well within the evidence presented and did not constitute prejudicial misconduct. As to the asserted inferences arising from certain other remarks of the prosecutor during his questioning of a witness, we find such alleged inferences so remote as to be untenable. Hence, we find no error.

■ We have examined Padilla's assertions of error in the instructions of the court and find no error. Likewise, we have examined Padilla's assertion that the evidence was insufficient to support the jury verdict and find, upon review, that the defendant's guilt as to each material element was proven beyond a reasonable doubt. We have also examined the assertion that the trial judge abused his discretion in sentencing the defendant to a period of ten years incarceration, but find the same to be within the statutory limits for involuntary manslaughter, I.C. § 18–4007(2), and hence find no error.

■ Finally, Padilla asserts error in the jury selection process on both constitutional and statutory grounds. He first claims that the jury was selected in such a way as to deprive him of his state and federal constitutional guarantees of equal protection and

due process. This Court, in *State v. Gerhardt*, 97 Idaho 603, 549 P.2d 262 (1976), quoted the holding in *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972):

"All that the Constitution forbids, however, is systematic exclusion of identifiable segments of the community from jury panels and from the juries ultimately drawn from those panels; a defendant may not, for example, challenge the makeup of a jury merely because no members of his race are on the jury, but must prove that his race has been systematically excluded. 406 U.S. at 413 [92 S.Ct. at 1634]." 97 Idaho at 605, 549 P.2d at 264.

It is sufficient to say that there was and is no showing whatsoever of a systematic exclusion of any segment of society from the jury venire in the present case and hence we find no merit in the constitutional claims.

Defendant's statutory challenge to the jury selection is based on the Idaho Uniform Jury Selection and Service Act, I.C. §§ 2–201 to –221. Padilla asserts that the trial judge did not make full use of various lists from which a jury venire may be drawn as required by I.C. § 2–206, which provides in pertinent part:

"(1) The jury commission for each county shall compile and maintain a master list consisting of all voter registration lists for the county supplemented with names from other lists of persons resident therein, such as lists of utility customers, property taxpayers, motor vehicle registrations, and drivers' licenses, which the Supreme Court from time to time designates."

Pursuant to I.C. § 2–206, the Court promulgated I.R.C.P. 47(a), which presently provides in pertinent part:

"All juries shall be selected as prescribed by the Uniform Jury Selection and Service Act of Idaho. Pursuant to § 2–206, Idaho Code, in order to foster the policy and protect the rights secured by the Uniform Jury Selection and Service Act, the jury commission of each county shall compile and maintain a master list consisting of:

(a) all voter registration lists of the county.

(b) the following additional list, when available: driver's license lists; and such other lists as the administrative judge for the judicial district shall designate."

In the case at bar, the jury venire was drawn exclusively from voter registration lists. Upon challenge of that procedure, the defendant claimed and now claims that lists of utility customers and motor vehicle registrations should also have been used. There was substantial conflict at trial regarding whether lists of motor vehicle owners and utility customers were actually available. We note that the office of the administrative director of the Courts had begun work compiling driver's license lists for each county, which lists could be used for jury selection purposes, but that the process was not complete at the time of the trial of this cause in the district court. While the Uniform Jury Selection Act contemplates the use of lists other than voter registration, without a showing that those other lists are available, we cannot agree that utilizing only voter registration lists constitutes a failure to comply with the act. Hence, we affirm the trial court's denial of defendant's motion.

The conviction is affirmed.

DONALDSON, C. J., and McFADDEN, J., concur.

BISTLINE, Justice, dissenting.

I disagree with the opinion of the majority that involuntary manslaughter as defined in I.C. § 18–4006(2) is a lesser included offense of voluntary manslaughter as defined in I.C. § 18–4006(1). Short weeks ago, in *State v. Thompson*, 101 Idaho 430, 614 P.2d 970 (1980), this Court reviewed the problems attendant to determining lesser included offenses in Idaho and reaffirmed the test set forth in *State v. Hall*, 86 Idaho 63, 383 P.2d 602 (1963):

"An 'included offense' is *one which is necessarily committed* in the commission of another offense; or one, the essential elements of which are charged in the information as the manner or means by which the offense was committed." 86 Idaho at 69, 383 P.2d at 605–06 (emphasis added) (citing *State v. Anderson*, 82 Idaho 293, 301, 352 P.2d 972, 977 (1960)).

As noted in *Thompson*, there are really two approaches to determining lesser included offenses set forth in this test, one of which is broader than, and encompasses, the other. The first approach is the "statutory" rule. This rule is embodied in that portion of the *Hall* test which states that "[a]n 'included offense' is one which is necessarily committed in the commission of another offense; ...." 86 Idaho at 69, 383 P.2d at 605–06. Under this rule, an offense, to be a lesser included offense, must be such that it is impossible to commit the greater offense without also committing the lesser.[1] The second, broader approach, is the "indictment" or "pleading" rule. Under this rule, which Idaho follows, or at least has followed until today's decision, if acts constituting a separate but lesser offense or offenses are alleged in the indictment or information as the manner or means by which the greater offense—the offense charged—was committed, a defendant may be convicted of the lesser offense so long as the evidence at trial proves that

the defendant is guilty of that offense, and so long as the punishment for the offense is not greater than the punishment for the crime actually charged. *State v. Thompson, supra.* This approach is embodied in the second prong of the *Hall* test, which states that a lesser included offense is "one, the essential elements of which are charged in the information as the manner or means by which the offense was committed." 86 Idaho at 69, 383 P.2d at 605–06. Involuntary manslaughter, however, does not qualify as a lesser included offense of voluntary manslaughter under either prong of the *Hall* test.

## I.

It is relatively easy to determine that involuntary manslaughter does not qualify as a lesser included offense of voluntary manslaughter under the statutory approach to determining lesser included offenses. *Little v. State*, 303 A.2d 456 (Me.1973), capsulizes the statutory rule well when it states that "to be necessarily included in the greater offense 'the lesser offense must be such that it is impossible to commit the greater without having committed the lesser.'" 303 A.2d at 548 (quoting *State v. Leeman*, 291 A.2d 709, 711 (Me.1972)).

Idaho's manslaughter statute, I.C. § 18–4006,[2] categorizes two *kinds*[3] of manslaugh-

1. It strikes me as more than a little ironic that only months ago the State argued vehemently that this narrower, statutory rule should be applied to preclude a defendant's requested instruction on lesser included offenses in *State v. Pulliam*, 101 Idaho 482, 616 P.2d 261 (1980), yet today argues just as vehemently that a much broader rule for determining lesser included offenses should be applied to uphold the conviction of a defendant for a crime which not only consists of different elements than the crime charged, but which was not mentioned in the information by which the defendant was charged.

2. I.C. § 18–4006 provides in part:
   "Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:
   "1. Voluntary–upon a sudden quarrel or heat of passion.
   "2. Involuntary–in the perpetration of or attempt to perpetrate any unlawful act, other

than arson, rape, robbery, kidnapping, burglary, or mayhem; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; or in the operation of any firearm or deadly weapon in a reckless, careless or negligent manner which produces death; or in the operation of a motor vehicle: ..."

3. Intentional criminal homicide is in actuality of three degrees: (1) first degree murder where necessary elements include premeditation and malice aforethought; (2) second degree murder where the premeditation is excluded; and (3) voluntary manslaughter, where both premeditation and malice are excluded.
   Involuntary manslaughter is statutorily defined as one of two *kinds* of manslaughter. In that regard it must be accepted as of some significance that since before statehood not only has murder been categorized into first and

ter: voluntary and involuntary. The statute does not refer to involuntary manslaughter as a *degree* of voluntary manslaughter, but rather as a separate *kind* of manslaughter. Intent to kill (qualified by the lack of malice and the presence of a sudden quarrel or the heat of passion) is an essential element of voluntary manslaughter; [4] involuntary manslaughter is not concerned with intent at all.[5] One of two types of acts must be shown to prove involuntary manslaughter; an unlawful killing either "in the perpetration of any unlawful act [other than certain enumerated crimes] or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; . . ." Neither of these acts require an intent to kill. Nor are these two types of acts elements of the statutory definition of voluntary manslaughter.

It is very possible under Idaho's manslaughter statute for a person to be guilty of voluntary manslaughter without being guilty of involuntary manslaughter. *See State v. Griffiths*, 101 Idaho 163, 610 P.2d 522 (1980) (Bistline, J., dissenting). *See also Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399 (1980). If a person intends to kill another, the killer does not act involuntarily. The vast majority of jurisdictions follow the rule that when intent to kill is proven, a person cannot be convicted of involuntary manslaughter. *See State v. Tuzon*, 118 Ariz. 205, 575 P.2d 1231 (1978); *People v. Williams*, 114 Cal.Rptr. 522 (Cal. Ct.App.1974); *Shanks v. Commonwealth*, 390 S.W.2d 888 (Ky.1965); *Commonwealth v. White, supra* (Pa.); *State v. Lopez*, 79 N.M. 282, 442 P.2d 594 (1968); *State v. Woods*, 278 N.C. 210, 179 S.E.2d 358 (1971). Thus, involuntary manslaughter is not a lesser included offense of voluntary manslaughter under the statutory rule, *i. e.*, it is not true that every time voluntary manslaughter is found it necessarily follows that involuntary manslaughter will also have occurred.

Since both voluntary and involuntary manslaughter have elements unique to themselves (voluntary manslaughter requires an intent to kill and involuntary manslaughter requires that the killing occur during the commission of an unlawful act or a lawful act negligently performed), it is impossible to say that involuntary manslaughter is a lesser included offense of voluntary manslaughter under the statutory approach to determining lesser included offenses.

## II.

The second prong of the *Hall* test requires a more detailed analysis of the information by which the defendant was charged. This "indictment" rule dictates that an offense is a lesser included offense if "the essential elements [of the lesser offense] . . . are charged in the information as the manner or means by which the offense was committed." 86 Idaho at 69, 383 P.2d at 605–06.

---

second *degree*, but the same is true of larceny, burglary, arson, and kidnapping.

**4.** "Where a homicide is neither justifiable nor malicious *but is intentional*, it is voluntary manslaughter. More specifically, 'voluntary manslaughter' as defined at common law and under statutes declaratory thereof, is substantially, the unlawful killing of another intentionally, but in a sudden heat of passion *due to adequate provocation*, and not with malice." 40 C.J.S. *Homicide* § 40 (1944) (emphasis added). Thus, while intent is an element of first degree murder, second degree murder and voluntary manslaughter, the type of intent in voluntary manslaughter is "without malice" (I.C. § 18–4006) and arises through a sudden quarrel or heat of passion. *See State v. Beason*, 95

Idaho 267, 506 P.2d 1340 (1973) (where there was no evidence in second degree murder trial that accused acted upon a sudden quarrel or heat of passion, trial court properly refused to give instruction on voluntary manslaughter.); *People v. Germany*, 42 Cal.App.3d 414, 116 Cal.Rptr. 841 (1974) ("Voluntary manslaughter is a specific intent crime.").

**5.** *See State v. Scott*, 72 Idaho 202, 239 P.2d 258 (1951) (instruction on criminal intent not necessary where defendant was charged with involuntary manslaughter); *People v. Germany, supra* ("involuntary manslaughter 'is the unlawful killing of a human being without malice aforethought and without an intent to kill . . .' ").

## A.

The essential elements of involuntary manslaughter as defined by I.C. § 18–4006(2) are: (1) an unlawful killing, (2) in the perpetration of an unlawful act (other than certain enumerated crimes) *or* a lawful act performed without due caution and circumspection. The information charging defendant here charges him with "the crime of VOLUNTARY MANSLAUGHTER, I.C. § 18–4006(1)" and then sets forth the alleged acts giving rise to the charge, *i. e.*:

> "That the said Defendant, ISIDORO PADILLA, on or about and between the period of February 9, 1977, and February 18, 1977, in the County of Bingham, State of Idaho, did, unlawfully and in a sudden quarrel or heat of passion, but without malice aforethought and premeditation, kill MARISOL PADILLA, a human being, by striking said child causing the child to fall striking her head against objects within the home, thereby mortally wounding the said MARISOL PADILLA, from which she sickened and died in the County of Bingham, State of Idaho, on the 18th day of February, 1977."

Unless these acts as alleged include the essential elements of involuntary manslaughter, then defendant cannot be convicted of involuntary manslaughter as a lesser included offense of voluntary manslaughter under the indictment or pleading theory set forth in the second prong of the *Hall* test.

The information here does not allege any unlawful acts other than the killing itself.

Therefore, the first set of circumstances in which an involuntary manslaughter might be found are not available for consideration under the indictment or pleading theory of lesser included offenses. The information also fails to allege that the killing occurred during the course of a lawful act performed "without due caution·and circumspection"[6] and therefore the second set of circumstances under which involuntary manslaughter might be found are not available for consideration as a lesser included offense under the indictment theory. In short, the information does not allege that acts constituting involuntary manslaughter were performed as a "manner or means" of committing the offense charged, and the defendant should not be found guilty of acts not set forth in the information. *State v. Cariaga*, 95 Idaho 900, 523 P.2d 32 (1974); *State v. McMahan*, 57 Idaho 240, 65 P.2d 156 (1937).

## B.

At one time in the evolution of this Court's jurisprudence, it was believed that specifying in the indictment or information the acts constituting the offense charged was not necessary. In *State v. Lundhigh*, 30 Idaho 365, 370, 164 P. 690, 691 (1917), this Court overruled *State v. Smith*, 25 Idaho 541, 138 P. 1107 (1914), and held that an indictment or information was sufficient so long as it set forth the statutory elements of the crime charged.[7] The *Lundhigh* decision survived for twenty years before it was overruled in *State v. McMahan*, 57 Idaho

---

**6.** "Without due caution and circumspection" as that phrase appears in I.C. § 18–4006(2) must be construed in conjunction with I.C. § 18–114, which requires the joint union of act and intent or criminal negligence before a public offense may be found. *State v. McMahan*, 57 Idaho 240, 65 P.2d 156 (1937). Since the term criminal negligence does not mean simply the failure to exercise ordinary care, but rather requires gross negligence such as amounts to reckless disregard of consequences and the rights of others, *see State v. Hintz*, 61 Idaho 411, 418, 102 P.2d 639, 643 (1940), it may not be argued that the type of negligence required to be found guilty of involuntary manslaughter may in any way be "implied" from the single act set forth in the information charging the defendant here.

**7.** It is noteworthy that in doing so, the *Lundhigh* Court stated: "It is possible that in cases of *involuntary manslaughter*, it might sometimes be necessary *that the particular circumstances* be alleged in order to constitute the complete offense." 30 Idaho at 370, 164 P. at 691 (emphasis added). Thus even the *Lundhigh* Court, which required much less specificity in indictments and informations than does today's majority, felt that the crime of involuntary manslaughter was sufficiently distinct from the crime of voluntary manslaughter to require that acts constituting *involuntary* manslaughter be alleged in the information.

240, 250, 65 P.2d 156, 160 (1937). The *McMahan* Court found that both the precursor to I.C. § 19–1409(2) and the due process clause of the Idaho Constitution, Art. I, § 13, required that the specific acts constituting the offense be alleged in the information or indictment. The *McMahan* Court stated:

> "To put a man on trial without giving him, in the information, '*a statement of the acts constituting the offense* in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended,' and to let him know these facts, for the first time when his trial is in progress, is to deprive him of the protection the statute was designed to give him and deny him due process of law in violation of article 1, section 13 of the Constitution." 57 Idaho at 250, 65 P.2d at 159–60 (emphasis in original).

In *McMahan*, the defendant doctor was charged in the information with manslaughter in that he did "willfully, unlawfully and feloniously kill . . . a human being . . . ." 57 Idaho at 243, 65 P.2d at 157–60. At the preliminary hearing the State indicated that it would proceed on the theory that the defendant had performed a criminal abortion on the deceased, as a result of which she suffered an attack of general peritonitis and died. The evidence at trial, however, showed simply that the defendant had treated the deceased for general peritonitis. On rebuttal the State put on evidence that the treatment for peritonitis was negligently performed. The defendant was convicted of involuntary manslaughter. In reversing the conviction, the Court stated, in language directly applicable to today's case, that:

> "It was not until during the trial that appellant or his counsel were in any manner informed that he was brought before the bar of justice to answer for homicide committed through negligence and carelessness. He was entitled to know, before being required to plead to the information, the nature of the charge against him, and it would have told him that had it been drawn in conformity to the plain mandates of the statute. Had it so informed him, he would have been in position to prepare his defense. Without knowledge as to the nature of the charge upon which he was to be tried, he could not do so." 57 Idaho at 249, 65 P.2d at 159.

*McMahan* has been expressly followed in a number of subsequent cases [8] and is unquestionably the law today.

The limits of the indictment or pleading theory of lesser included offenses dictate that an offense with elements which differ from those of the charged offense cannot be considered a lesser included offense unless all of the elements of the lesser offense are alleged in the information or indictment as the "manner or means" of commission of the greater offense. *State v. Thompson, supra.* I.C. § 19–1409(2) requires that an indictment contain: "[a] statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." I.C. § 19–1303 makes this requirement applicable to informations as well as indictments. It was this provision which prompted the *McMahan* Court to state, in overruling *Lundhigh*, that "[i]t is for the legislature, not the courts, to say what an indictment or information shall contain (Idaho Const., art. 2, sec. 1)." 57 Idaho at 248, 65 P.2d at 159. To allow a defendant to be convicted of acts which are not set forth in the indictment or information goes beyond the pleading theory of lesser included offenses, violates specific provisions of the Idaho Code and denies the defendant due process of the law. Yet that is exactly the procedure approved by today's majority.

### III.

*State v. Boyenger,* 95 Idaho 396, 509 P.2d 1317 (1973) states that "courts cannot look

8. *See State v. Lopez,* 98 Idaho 581, 570 P.2d 259 (1977); *State v. Polson,* 92 Idaho 615, 448 P.2d 229 (1969); *State v. McKeehan,* 91 Idaho 808, 430 P.2d 886 (1967); *State v. Calkins,* 63 Idaho 314, 120 P.2d 253 (1941).

merely to the crime as charged in the information to make the determination of whether another offense is 'necessarily included' within that charge, but must also look at the evidence adduced at trial." *Id.* at 400, 509 P.2d at 1321. This is what the majority here has in fact done. It must be made clear, however, that jury instructions on lesser included offenses are commonly requested by a defendant, and the rule to which this statement refers is that a defendant is not entitled to an instruction on a lesser included offense unless the evidence produced at trial supports such an instruction, *State v. Elsen*, 68 Idaho 50, 187 P.2d 976 (1947), but is entitled to an instruction on the lesser offense *when the defendant requests* the instruction *and* the evidence *would* support a conviction on the lesser offense.

This does *not*, however, mean that a defendant may be convicted of *any* crime which the evidence adduced at trial tends to support, regardless of whether the defendant requests an instruction on the crime. Such a rule would violate I.C. §§ 19–1409(2), 19–1303, Art. 1, § 13 of the Idaho Constitution, the due process clause of the United States Constitution and would be contrary to an impressive list of precedents stretching back to the decision in *McMahan, supra*. It would stand the rule for determining lesser included offenses on its head by saying that *any* offense is a lesser included offense so long as the evidence shows that the offense occurred and the punishment is less than the punishment for commission of the offense charged in the information.

A defendant simply may not be convicted of a crime for which the defendant is not given notice that he may be convicted. "Conviction upon a charge not made would be a sheer denial of due process." *DeJonge v. Oregon*, 299 U.S. 353, 362, 57 S.Ct. 255, 259, 81 L.Ed. 278 (1937). When a person is convicted of a crime not set forth in the information and which consists of elements different than those of the crime charged, then "the variance between the complaint and conviction denied [a defendant] due process of law . . . ." *State v. Cariaga*, 95 Idaho 900, 904, 523 P.2d 32, 36 (1974).

Where the defendant *requests* such an instruction, it may be assumed that the defendant either had sufficient notice of the crime charged or prefers to waive the right to notice. While paying lip service to the distinction between a defendant's requested jury instruction and a state requested jury instruction, the majority has apparently concluded that the instruction given here was justified simply because the evidence supported it. The dangers of such a rule seem too evident to require elucidation. *See People v. Babb*, 103 Cal. App.2d 326, 229 P.2d 843 (1951) (defendant charged with sodomy and convicted of vagrancy); Comment, Jury Instructions on Lesser Included Offenses, 57 Northwestern L.Rev. 62, 63 (1962) ("[The defendant's] preparation is necessarily spread over the entire range of offenses of which he may possibly be convicted.").

In *State v. Lopez*, 100 Idaho 99, 102, 593 P.2d 1003, 1006 (1979), we stated that under I.C. § 19–2132(b), a "duty to instruct as to lesser included offenses exists even when as a matter of trial tactics a defendant fails to request the instruction." This admonition, however, should not be taken to mean that trial courts are required to instruct on any offense supported by the evidence, regardless of the crime or acts charged in the information or indictment, despite the fact that this is the apparent holding of today's majority.

This Court sits primarily not to determine issues of guilt or innocence, but to make appellate reviews to determine whether criminal defendants have had the fair trial to which all are entitled. Defendant here was charged with voluntary manslaughter, and understandably defense counsel was obliged to place defendant on the stand to disprove the requisite element of intent. It can hardly be said that a fair trial resulted when the trial court at the close of the trial instructed the jury that defendant could be convicted of a crime, the commission of which was not charged against him in the information.

BAKES, J., concurs.