439 P.2d 691

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Frank J. MARTINEZ, Defendant-Appellant.**

**No. 9740.**

Supreme Court of Idaho.

April 15, 1968.

R. H. Young, Nampa, Wayne Fuller, Caldwell, for appellant.

Allan G. Shepard, Atty. Gen., and William D. Collins, Asst. Atty. Gen., Boise, for appellee.

SPEAR, Justice.

Frank J. Martinez, appellant herein, was charged with the second degree murder of one Michael Anthony Coburn, a 2-year 10-month old infant, on July 31, 1964. The infant had died from injuries allegedly inflicted by appellant's repeated kicking and striking of the deceased's body. Trial was held in June, 1965, and appellant was found guilty as charged.

At approximately 2 o'clock p. m. on July 31, 1964, an ambulance was summoned to the residence of Sandra Coburn in Nampa, Idaho. An attendant examined the body of the deceased child in the presence of his mother and appellant, and thereafter advised them to wait for the arrival of the Nampa Police. Appellant then left the premises to take a second child to his mother's home. On the way he was met by two police officers who offered him a ride and then returned him to the Coburn apartment. After waiting aproximately an hour for the police to conclude their investigation, appellant was taken to the Nampa Police Station. During the course of the next three and one-half hours, appellant was variously questioned, taken to the Alsip Funeral Chapel to view the deceased child's body, returned to the Nampa station, and finally transferred to the Sheriff's office in Caldwell where he made certain incriminating statements, the admissibility of which constitutes the central issue on this appeal. The district court held a separate hearing outside the presence of the jury and determined that the statements were admissible.

The events which took place after appellant was taken from the Coburn residence to the Sheriff's office in Caldwell are the subject of four of the five assignments of error listed by counsel. For clarity, the events occurring at each location are set forth separately below.

*Nampa Police Station*

Appellant was taken into custody and brought to the Nampa Police Station where he was questioned by Captain Loe of the Nampa Police in the presence of Sheriff Haile and the Prosecuting Attorney of Canyon County, Mr. Yost.

Sheriff Haile testified that appellant was not under arrest at this time, and the evidence discloses that appellant did not believe himself to be under arrest. Appellant was initially questioned about the cause of the child's death, but he maintained he didn't know anything about it because he was asleep. Sheriff Haile was not certain whether appellant, at this time, had been advised of his rights to remain silent, that an attorney would be appointed, or that anything he said might be used against him. However, he did testify that appellant had made no request for an attorney.

Appellant maintained that he did request an attorney at the time of this questioning, but that his request was ignored; and, furthermore, that he had not been advised about any of his constitutional rights before the questioning began.

*Trip to Alsip Chapel*

Because appellant seemed rather evasive in responding to questions concerning the bruises on the child's body, he was taken by Sheriff Haile to view the body at the Alsip Chapel. Appellant testified that he was asked certain queestions by Sheriff Haile and Mr. Yost, but that he gave no answers and remained quiet. Although he was still not told that he was under arrest, he was asked to take off his shoes.

Sheriff Haile testified that he asked appellant if he could explain all these fresh bruises on the child's body, and that when appellant said he didn't know, he asked for his shoes as they may have possibly fitted these bruises. At this time, appellant was not under arrest but was regarded as a likely suspect. When appellant was told that his shoes did fit the bruises, he continued to remain silent.

*Transfer of Appellant from Alsip Chapel to Nampa Police Station*

Appellant was transported back to the Nampa station where he remained for an indefinite period of time. It does not appear that he was questioned during this period, but appellant did testify that he again requested an attorney, which request was ignored. During this time appellant was not told that he was under arrest.

*Transfer from Nampa Station to Sheriff's Office at Caldwell*

Appellant testified that while en route to the Sheriff's office, Deputy Jerry Wilda requested him to make a confession. Appellant stated he'd rather talk to an attorney first, to which the deputy replied that such would only confirm his guilt. Appellant further stated that he was then suffering from a headache and requested to see a doctor.

Deputy Wilda's version is that (1) appellant did not request an attorney nor did he complain of being sick; (2) Wilda merely asked appellant if he wanted to tell him what happened, but appellant did not respond; (3) Wilda advised appellant he did not have to say anything, and appellant remained mute; (4) Wilda did not tell appellant that requesting an attorney would indicate guilt.

*Statements Taken at Sheriff's Office*

Appellant testified that he was questioned by three persons at the Sheriff's office, namely, Deputy Wilda, Probation Officer Curtis Young and Sheriff Haile.

In reference to the conversation with Deputy Wilda, appellant contends he was first requested to admit the death of the child. He responded by again asking for an attorney. Wilda then asked appellant if he would rather talk to his probation officer, to which appellant agreed.

Appellant testified that he preferred to speak alone with Mr. Young because he had confidence in him and because of their previous relationship. When Mr. Young entered the room, he said that he could help appellant only if appellant would tell him what happened. Appellant contends that he was not advised of his constitutional rights by the probation officer and that he thought he requested an attorney at this time. He further testified that Mr. Young then told appellant he would be required to repeat his statement to the Sheriff because of what he had told Mr. Young and because he was on probation.

Sheriff Haile then entered the room with the prosecuting attorney and a stenographer and requested appellant to give him the same statement he had just given to Mr. Young. Appellant testified that Sheriff Haile thereupon advised him of his "constitutional rights" although he could not remember whether he had been advised of his right to appointed legal counsel or that his statements must be given of his own free will. He testified that his statement was given freely although he had requested to see a doctor but was told that he must first make a statement. Appellant was not advised he was under arrest nor did he believe himself under arrest. He maintains that he did make a request to see an attorney at this time.

Appellant's version of the various conversations taking place at the Sheriff's office differs markedly from the testimony of the other witnesses. Deputy Wilda testified that the only words spoken to him by appellant at the Sheriff's office were to the effect that he wished to speak to Mr. Young. When Sheriff Haile returned, Wilda told him that appellant had already spoken to Mr. Young, had made a statement and that he now wanted to speak with Sheriff Haile.

Probation Officer Young testified that upon entering the room he asked appellant if he would like to talk with him, and appellant stated that he would. He told appellant that he wanted to know why he was there and asked appellant to explain the situation to him. He further testified that

to the best of his recollection he advised appellant that anything he said could be used against him, that he did not have to talk to him and that he had a right to an attorney. Counsel for appellant attempted to impeach this testimony by referring to Mr. Young's previous testimony at the preliminary hearing, wherein the witness testified that he had not advised appellant that anything he said could be used against him. Mr. Young also denied having told appellant that he had to talk to Sheriff Haile.

On cross-examination, Mr. Young reaffirmed his position despite what he had said at the preliminary hearing, stating that this was his normal practice when talking to these fellows.

Sheriff Haile testified that at the outset of their conversation he first advised appellant of his rights to appointed counsel, to remain silent, and that anything he said could be used against him. Appellant then admitted having kicked and beaten the deceased child, and thereafter his statement was reduced to writing.

Sheriff Haile considered appellant "under arrest" at this time and felt that appellant so knew, although he may not have expressed it to him in so many words. At the time appellant was taken to the Alsip Chapel, he was considered only a suspect, along with Sandra Coburn.

Sheriff Haile did not recall that appellant had made any complaints about a headache and denied that appellant had ever requested an attorney.

Based upon this conflicting evidence the trial court ruled that appellant's statements —to the effect that he had kicked and beaten the deceased—were freely and voluntarily given after he had been fully advised of his constitutional rights and that these statements were, in fact, solicited by the appellant himself. As such, the court admitted the testimony of Probation Officer Young and Sheriff Haile in this regard.

Appellant's assignments of error Nos. 2 through 5 all concern the admissibility at trial of the incriminating statements made by him to Probation Officer Young and Sheriff Haile at the Sheriff's office in Caldwell.

■■■ Since the trial in the instant case took place in June, 1965, the admissibility of appellant's incriminating statements is governed by the rules set forth in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). (See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 [1966].) In analyzing these rules this court recently pointed to four separate circumstances which must occur to require exclusion of an accused's extra-judicial incriminating statements. They are:

"(1) The stage of investigation is beyond that of a general inquiry into an unsolved crime with the investigation beginning to focus on a particular suspect; (2) The particular suspect is in custody; (3) The police are carrying out a process of interrogations tending to eliciting incriminating statements; (4) The suspect must not have been effectively informed of his constitutional rights, or, if so informed, he must not have knowingly and intelligently waived such rights." (State v. Carpenter, 92 Idaho 12, 435 P.2d 789, at pp. 791–792 [1967].)

The facts of the present case compel the conclusion that appellant was not denied his constitutional rights at the Sheriff's office under the four-point criteria as set forth in *Carpenter*, supra, and that his incriminating statements were properly admitted during the course of trial.

■ Prior to his being questioned at the Sheriff's office in Caldwell, appellant did not make any incriminating statements, and, in fact, had for the most part remained silent throughout the various proceedings.

At the separate hearing outside the presence of the jury, both Sheriff Haile and Probation Officer Young testified they had advised appellant of his constitutional rights and that appellant had at no time requested

to see an attorney. Moreover, Deputy Wilda testified that when he first brought appellant to the Sheriff's office, appellant, on his own initiative, stated that he would talk alone to Mr. Young. After appellant had made his statement to Mr. Young, Deputy Wilda entered the room and was told by appellant he now wished to speak with the Sheriff.

Appellant could not remember whether he requested an attorney at the time he spoke with Mr. Young. He did admit that Sheriff Haile had advised him of his constitutional rights and that his statements were given of his own free will.

From the foregoing testimony the trial court made the following findings:

"Based on the evidence heard on this matter of the confession, in the absence of a jury, the Court finds that the statement made by the defendant to the Sheriff of Canyon Couny, Idaho, in the sheriff's office at Caldwell, Idaho, was freely and voluntarily made without threats or force or fear, without any inducement, and after the defendant had been advised of his right to counsel, and that what he said could be used against him in a Court of law. And furthermore, the statement made to the Sheriff of Canyon County, Idaho, was in fact solicited by the defendant himself; based on the testimony of Mr. Young and Mr. * * * the sheriff. Also, I find the * * * I make the same finding with reference to the statement made by the defendant to Mr. Curtis Young, who just left the stand; same finding applies to that. Therefore, I hold that both statements made by the defendant to be admissible in this trial. That is the oral statements made by the defendant in both instances will be admissible in this trial."

The trial court committed no error in so finding and ruling.

Appellant further contends that where there was no break in the "stream of events" to insulate statements obtained after formal warning from prior statements taken without warning, then the later statements are not voluntary, relying on the recent Supreme Court decision of Clewis v. State of Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967). The defendant therein had been subjected to prolonged police interrogations over a period of nine days which resulted in three confessions, the latter being admitted into evidence at the trial. The Court held this third written confession to be involuntary and therefore inadmissible after considering the "totality of circumstances" wherein it was also found that the defendant was never fully advised that he could consult with counsel or have one appointed if necessary, that he was entitled to remain silent, and that anything he said could be used against him. Under these circumstances, the third confession could not be sufficiently insulated from the effect of the stream of events that had taken place over the past nine days.

■ The instant case is clearly distinguishable on the record in that (1) the totality of circumstances to be considered occurred within the time span of three and one-half hours, (2) prior to his admissions at the Sheriff's office, appellant had made no other incriminating statements, and (3) appellant had been fully advised of his constitutional rights.

During the course of trial, the court admitted into evidence two colored photographs of the naked body, front and back, of the deceased child. These photos, which were duly verified, show marks, bruises and abrasions on the child's body. They were admitted for the stated purposes of identification, as an aid to the jury in understanding the nature and extent of the injuries involved, and as probative of implied malice, i. e., that appellant had acted with an abandon and malignant heart.

Appellant contends that these photographs were inadmissible because they served only to arouse the passions and prejudices of the jury and were of little or no probative value in that identification of the dead child had previously been made by several witnesses and because there was no controversy as to

the medical cause of death or nature of the injuries.

This is the basis of appellant's first assignment of error but it is without merit.

■ The general rule is that photographs of the victim in a prosecution for homicide, duly verified and shown by extrinsic evidence to be faithful representations of the victim at the time in question are, in the discretion of the trial court, admissible in evidence as an aid to the jury in arriving at a fair understanding of the evidence, proof of the *corpus delicti,* extent of injury, condition and identification of the body, or for their bearing on the question of the degree or atrociousness of the crime, even though such photographs may have the additional effect of tending to excite the emotions of the jury. (See generally 23 C.J.S. Criminal Law § 852 [1] [1961]; 29 Am.Jur.2d Evidence §§ 785–788 and 798 [1967]; 159 A.L.R. 1413 [1945]; 73 A.L.R.2d 769 [1960]. See also State v. Kleier, 69 Idaho 278, 206 P.2d 513 [1949].)

The generalizations above referred to have been specifically applied with respect to homicide cases involving the admissibility into evidence of photographs for the designated purpose of determining the atrociousness or malice with which the crime was committed. (See cases cited in 159 A.L.R. 1413 at page 1442 and 73 A.L.R.2d 769 at page 831.) In the recent case of Napier v. Commonwealth of Kentucky, Ky. Ct. of Appeals, Feb. 16, 1968, 426 S.W.2d 121, the court points out and holds:

"Over appellant's objection the Commonwealth was permitted to introduce a post mortem photograph of the victim's face showing the bullet hole and other marks of the fray. It is described as 'grisly and gruesome.' Since a pathologist had quite clearly demonstrated to the jury the points of entry and exit, we concede that the photograph may not have been strictly necessary. Nevertheless, an accurate photograph is more believable than any chart or second-hand description and in this case, as it developed, appellant's

theory that Cox somehow managed to shoot himself made the precise location of the wound vitally important.

"It has been said that if the evidentiary value or necessity of a gruesome photograph outweighs its possible prejudicial effect it may be admitted. 29 Am.Jur.2d 861 (Evidence, § 787). 'The rule prohibiting the exhibition of inflammatory evidence to a jury does not preclude the revelation of the true facts surrounding the commission of a crime when these facts are relevant and necessary.' Salisbury v. Commonwealth, Ky., 417 S.W.2d 244, 246 (1967). But we need not depend on that principle as a basis for holding this particular photograph admissible. The fact is that it was not so gruesome as to be likely to prejudice or inflame the men and women, inured as they are to the horrors of both war and television, who sit on a modern jury. The time has come when it should be presumed that a person capable of serving as a juror in a murder case can, without losing his head, bear the sight of a photograph showing the body of the decedent in the condition or place in which found. 'Where the photographs revealed nothing more than the scene of the crime and the persons of the victims, they were not incompetent. Salisbury v. Commonwealth, Id.'"

■ In the instant case, appellant was charged with having "wilfully, knowingly, intentionally, unlawfully, feloniously and with malice aforethought" murdered the victim by repeatedly kicking and striking the body of the deceased with his shoe. The record shows that the trial court carefully considered objections to the photographs at the time of their introduction and admitted them for the stated purposes hereinbefore mentioned. The photographs were duly verified and were sworn to be true and correct representations of the objects portrayed. As such, the trial court did not abuse its discretion in the admission of these exhibits. See State v. Iverson, 77 Idaho 103, 289 P.2d 603 (1955); State v. Linebarger, 71 Idaho 255, 232 P.2d 669

(1951); State v. Powell, 71 Idaho 131, 227 P.2d 582 (1951).

For the foregoing reasons, the judgment of conviction is affirmed.

SMITH, C. J., and TAYLOR, Mc-QUADE and McFADDEN, JJ., concur.