IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 32251

| STATE OF IDAHO, | ) | |
|---|---|---|
| | ) | 2009 Opinion No. 39 |
| Plaintiff-Respondent, | ) | |
| | ) | Filed: May 21, 2009 |
| v. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| IGNACIO JESSE SANCHEZ, III, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Darla S. Williamson, District Judge.

Judgment of conviction for first degree murder, affirmed.

Greg S. Silvey, Kuna, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

PERRY, Judge

Ignacio Jesse Sanchez, III, appeals from his judgment of conviction for first degree murder. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Emergency personnel responded to the home of Sanchez's mother after they received a call that A.A., a two-year-old girl, was not breathing and had no pulse. After unsuccessful attempts to resuscitate her, A.A. died at the hospital from blunt-force trauma to the left side of her head which fractured her skull and damaged her brain. Aside from the severe bruising and swelling associated with the fatal injury, A.A.'s head had numerous other bruises and some other swelling. A.A.'s neck had bruising patterns consistent with strangulation. Additionally, A.A. had bruises on her back, and her torso was covered with over sixty different bruises from her chest to her lower abdomen. An autopsy further revealed a broken arm, several serious internal abdominal injuries resulting from external force, and extensive bleeding in A.A.'s skull and

1

bruising on her brain. The pathologist performing the autopsy concluded that A.A.'s injuries were sustained over the course of several days because they were in different stages of recovery.

Sanchez told police that he was caring for A.A. while her mother was in jail. He admitted that he caused A.A.'s injuries by choking her to make her stop crying, stepping on her while she lay on the ground to teach her about potty training, forcefully poking her with his fingers in the stomach to discipline her, as well as hitting her with his closed fist including numerous blows to her head over time. The day of A.A.'s death, before she was fatally struck in the side of the head, she was lethargic and vomiting--symptoms of a concussion.

Sanchez was charged with first degree murder. I.C. §§ 18-4001, -02, -03(a) and (d). The state also filed a notice of intent to seek the death penalty based on the existence of aggravating statutory factors. At trial, the district court admitted jail recordings of telephone conversations between A.A. and her mother during which A.A. complained that Sanchez was pushing her on the stomach, she cried, she felt sick, and her "tummy" hurt. The district court also admitted many hospital and autopsy photographs of A.A.'s body which depicted the numerous injuries she sustained and the extent thereof. Additionally, the district court admitted a recording of the 911 call placed by Sanchez's mother. A jury found Sanchez guilty of first degree murder and, after the penalty phase of the trial, additionally found the existence of two statutory aggravators. However, the jury could not reach a unanimous decision as to the imposition of the death penalty. Therefore, because the jury found some statutory aggravators, the district court sentenced Sanchez to a determinate term of life imprisonment. Sanchez appeals. Specifically, Sanchez challenges the district court's admission of the recorded telephone conversations between A.A. and her mother, the hospital and autopsy photographs of A.A.'s body, and the recording of the 911 call placed by Sanchez's mother.

## II.

## ANALYSIS

### A. Recorded Telephone Conversations

Sanchez argues that the statements made by A.A. to her incarcerated mother over the telephone were testimonial because they were not made during an ongoing emergency and they were a description of past events. Therefore, Sanchez contends, they should be excluded as a violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution because A.A. was not available for cross-examination. The state responds that A.A.'s statements

2

to her mother were nontestimonial because they were made during informal, private conversations; her mother was not a government official; and A.A. was not subjected to interrogation in order to gain evidence for subsequent prosecution. The implication of the constitutional protections of the Confrontation Clause is a question of law over which we exercise free review. *State v. Hooper*, 145 Idaho 139, 142, 176 P.3d 911, 914 (2007).

The threshold question in Confrontation Clause analysis is whether the challenged out-of-court statement is testimonial. *Hooper,* 145 Idaho at 140, 176 P.3d at 915. Testimonial statements of witnesses absent from trial are admissible only when the declarant is unavailable and when the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Hooper*, 145 Idaho at 142, 176 P.3d at 914. The determination as to whether a statement is testimonial must be made under the totality of the circumstances with particular focus on the principal evil sought to be remedied by the Sixth Amendment's Confrontation Clause--the use of ex parte examinations as evidence against an accused. *Hooper*, 145 Idaho at 145, 176 P.3d at 917.

A statement is testimonial when circumstances objectively indicate that the primary purpose of an interrogation is to establish or prove past events potentially relevant to later criminal prosecution, unless the primary purpose of the interrogation is to enable police to assist in an ongoing emergency. *Davis v. Washington*, 547 U.S. 813, 822 (2006); *Hooper*, 145 Idaho at 143-44, 176 P.3d 915-16. Thus, some relevant factors include whether the witness is speaking about events as they are actually happening, rather than describing past events; whether a reasonable listener would recognize that the witness was facing an ongoing emergency; whether the nature of what was asked and answered, viewed objectively, was such that the elicited statements were necessary to resolve the present emergency; and the formality of the interrogation. *Hooper*, 145 Idaho at 144, 176 P.3d at 916.

In this case, A.A. was not subjected to any form of police questioning. Nevertheless, Sanchez contends that we should find A.A.'s statements to be testimonial because, in *Davis*, the United States Supreme Court left open the issue of whether statements to persons other than law enforcement personnel could be testimonial. Additionally, Sanchez relies on language in a footnote that the Supreme Court's holding in *Davis* does not imply that statements made in the absence of an interrogation are necessarily nontestimonial. The question of whether statements

3

made during an informal conversation between private persons can be deemed testimonial has not been directly addressed by the United States Supreme Court or by Idaho courts.

The question in this case revolves around a two-year-old girl speaking with her mother during recorded conversations. There were five recorded telephone conversations which contained statements from A.A. about being sick or pushed. In one conversation, A.A. spontaneously stated to her mother that Sanchez was pushing her in the stomach and that she cried. In another conversation, A.A. stated that she cried and then made an unintelligible statement about her stomach. In another conversation, A.A. briefly spoke on the phone and made a comment about how she cried because someone was making her sick. In another conversation, A.A. stated that she was crying; however, it was unclear whether she said that because she was in pain or missed her mother. In the final conversation, A.A. stated that she was sick.

We need not address the question of whether conversations between private persons can, under certain circumstances, be deemed testimonial. As noted, the statements made here were of a child to her mother on the telephone while her mother was in jail. There was no interrogation. The statements were not made in response to questioning akin to that which might be expected in the courtroom. *See Davis*, 547 U.S. at 828 (*Crawford* statements aligned perfectly with their courtroom analogues, while statements in *Davis* did not.). We reject Sanchez's contention that a child's statements to her mother are the functional equivalent of an adult calling the police.

The conversations lacked any degree of formality. The only reason the conversations were recorded was because of jail policy. To the extent any statement from A.A. can be said to have been elicited, it was in the nature of "what's wrong?" not "what happened?" This situation did not involve police, their functional equivalent, or formalities associated with in-court or extra-judicial statements contemplated as testimonial in *Crawford*, 541 U.S. at 51-52. In fact, there is no valid basis to conclude that any law enforcement personnel, or their functional equivalent, were involved at all relative to these statements.

In this case, the primary purpose of the conversations was not to establish or prove past events potentially relevant to later criminal prosecution. The statements made by A.A. were spontaneous, in which she principally described her feelings and the present state of her health. These statements are more closely related to *Davis* than *Crawford*. While A.A. may not have been seeking immediate medical treatment, her statements are more of a plea for help and

4

intervention, not accusation. Furthermore, the statements were not made under circumstances which would lead an objective witness reasonably to believe that they would be available for use at a later trial. Therefore, the statements at issue here are nontestimonial and the protections of the Confrontation Clause are not implicated. Accordingly, we conclude that their admission was not error.

## B. Hospital and Autopsy Photographs

Sanchez argues that the district court erred by admitting hospital and autopsy photographs showing the number and extent of A.A.'s internal and external injuries. He contends that the photographs were irrelevant and that the probative value was substantially outweighed by the danger of unfair prejudice. Furthermore, Sanchez contends that the photographs were unduly cumulative. The state responds that the photographs were relevant to establish A.A.'s identity and the extent of her injuries. Additionally, the state contends that its burden of proving A.A.'s death by torture necessitated the use of the many photographs, notably during the testimony of the state pathologist who used each photograph to demonstrate different injuries with distinct features sustained over time.

Whether evidence is relevant under I.R.E. 401[1] is an issue of law which we review de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Perry*, 144 Idaho 665, 667, 168 P.3d 49, 51 (Ct. App. 2007). A lower court's determination under I.R.E. 403[2] will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the

---

[1]     Idaho Rule of Evidence 401 defines relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2]     Idaho Rule of Evidence 403 provides that, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, . . . or needless presentation of cumulative evidence."

5

specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Sanchez contends that the district court admitted thirty-two photographs of A.A. In fact, there are twenty-eight. There are three photographs of A.A. from the hospital. One depicts A.A.'s nude body lying on hospital blankets showing the severe extent of the bruising on her abdomen and notable swelling on the left side of her head. In this picture, as in all pictures depicting A.A.'s nude body, A.A.'s genital area has been censored. The second hospital photograph shows the arms of various medical personnel working on A.A. with numerous tubes and IV lines associated with emergency room procedures. The photograph of A.A.'s body is not full view, but shows her stomach and uninjured portions of her face. The third hospital photograph is of A.A.'s body turned on its side showing some bruises on her back from the shoulders to her buttocks. Sanchez also complains of a photograph from the hospital showing a close-up of the seal placed on the body bag containing A.A.'s body.

The other photographs of which Sanchez complains are all from A.A.'s autopsy. The first is an overhead view of A.A.'s nude body lying on the autopsy table with her head shaven to show the number of injuries from her head to her lower abdomen. Next, there is a series of fifteen photographs of A.A.'s head from various angles and distances: one is an overhead view from the front showing bruising and swelling; another is a view from the right side showing the bruising to that side of her head with another close-up photograph specifically depicting areas of swelling on the right side of her head and smaller abrasions around her ear; there is a photograph of the back right side of A.A.'s head showing injuries to the back of her ear with another close-up photograph of those cuts and bruises accompanied by a close-up photograph of the front of A.A.'s right ear showing additional cuts; there is an identical series of photographs showing the left side of A.A.'s head and her left ear, but with much more severe bruising due to the fatal blow she received on this side; there is an overhead view of A.A.'s body laying face down on the table with another photograph showing a close-up view of the bruising on the back of her head and another photograph showing a close-up view of the bruising on the top of her head; and there are two close-up photographs of bruising to A.A.'s neck, injuries which are consistent with strangulation.

In addition to the autopsy photographs of A.A.'s head, there are three close-up photographs of A.A.'s abdomen--one from overhead and one from each side. The side views

6

depict additional injuries that are not apparent from the overhead view. Lastly, there are six photographs depicting internal injuries suffered by A.A. First, there is a photograph of A.A.'s arm, near the wrist, after it was cut open to show a broken arm. Next, there are two photographs of the inside of A.A.'s abdomen showing different internal injuries in her lower abdomen and another near her diaphragm. Next, there is a close-up photograph of the left side of A.A.'s brain and the massive bruise that it sustained indicating the force with which A.A. was struck. Lastly, there are two photographs of A.A. taken from different angles in order to show the number and extent of her skull fractures. In both photographs, the skin of the scalp has been incised and pulled back in order to fully show the fractures. In one photograph, the scalp is held out to show the massive bleeding on the tissue around the skull where the fatal injury occurred.

First, we address the relevancy of the photographs. Sanchez now concedes that only the photograph of the body bag, the photograph of A.A.'s nude body lying on the hospital blankets,[3] and the photograph of the various medical personnel working on A.A. were irrelevant. Sanchez contends that these photographs were irrelevant because he was not disputing the chain of custody for which the body bag photograph was used, the identity of the victim, or the presence and identity of the doctors which were seen in the photograph of the medical personnel attending to A.A.

Idaho Rule of Evidence 401 defines relevant evidence as having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. This definition does not pertain to only disputed facts, as Sanchez suggests. Photographic evidence of a homicide victim, duly verified and shown by extrinsic evidence to be faithful representations of the victim at the time in question, is admissible at the discretion of the trial court for proper purposes. *State v. Martinez*, 92 Idaho 183, 188, 439 P.2d 691, 696 (1968). Such evidence is properly admitted as an aid to the jury in arriving at a fair understanding of the evidence; proof of the corpus delicti; extent of injury, condition and identification of the body; or for their bearing on the question of the degree

---

[3]    Sanchez claims that the photographs that "were ostensibly admitted to identify [A.A.]" were irrelevant. Sanchez does not clearly indicate which photographs he refers to. However, at an earlier point in his brief, Sanchez refers to the state's argument at the pre-trial hearing that the photograph of A.A.'s body on the hospital blankets would be used for identification. Therefore, because we can find no other mention of identity photographs in Sanchez's briefing, we will assume that this is the photograph of which Sanchez complains.

of the crime, even though it may have the additional effect of tending to excite the emotions of the jury. *Id.* "[P]hotographs of the body of a homicide victim are not necessarily inadmissible because . . . the defendant has admitted some or all of the facts shown thereby. Nor is there ground for exclusion, merely because the photographs offered are enlargements of original photographs." 40A AM. JUR. 2D *Homicide* § 421 (footnotes omitted).

In this case, the state had the burden of proving the identity of the victim and to connect those who were testifying with their work to revive A.A at the hospital. The state was entitled to show photographs in order for these witnesses to testify as to the condition of A.A. upon her arrival at the hospital and to verify that they treated her. The state also had to show the chain of custody of A.A.'s body from the time she was pronounced dead until the body bag was opened before the autopsy, in order to prove that it was not tampered with prior to the autopsy procedure. At trial, police officers testified as to the sealing of the body bag until it was delivered to the pathologist for the autopsy. The photograph served as an aid to the jury to come to a fair understanding of the testimony of these officers. Therefore, the photographs of the body bag, A.A.'s body lying on the hospital blankets, and the medical personnel working to revive A.A. at the hospital, were relevant.

Sanchez further argues that the photograph of the body bag is irrelevant because it does not conclusively establish the chain of custody nor that A.A.'s body was not tampered with. Instead, Sanchez contends, the photograph did nothing more than present a macabre image to the jury which inflamed its passions. However, the photograph does not have to conclusively establish those facts in order to be relevant. Rather, the existence of the photograph in evidence need only make those facts more or less probable. In this case, the photograph of the body bag was relevant. Further, we are unpersuaded, as Sanchez argues, that a close-up image of a black bag with a plastic tie sealing the zipper so inflames the passions of the jury so as to affect the fairness of Sanchez's trial.

Next, we consider the balancing of the prejudicial effect and the probative value of the photographs. Sanchez argues that the prejudicial effect of these photographs substantially outweighs their probative value. Sanchez also argues that the district court abused its discretion by failing to make the required finding at all. Sanchez claims that there is "absolutely nothing in [the district court's] ruling discussing any inflammatory effect or the danger of unfair prejudice to the defendant which the photos may have." Sanchez's claim is belied by the record, including

8

those portions directly quoted by Sanchez in his brief. At the pre-trial hearing concerning the photographs of A.A.'s body, the district court found the photographs to be relevant and stated:

> Having made an affirmative determination of the issue of relevancy, the court also determines that the probative value of the offered evidence is not substantially outweighed by the inflammatory effect or by the danger of unfair prejudice to [Sanchez].

We conclude that the district court made the requisite finding under Rule 403. Having reviewed the photographs, we further conclude that Sanchez has failed to show error in the district court's determination. To the extent that Sanchez now argues that the district court was required to articulate what the inflammatory effect of each photograph might be on Sanchez's defense, this argument is not supported by adequate argument or authority. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Therefore, the district court did not abuse its discretion by determining that the probative value of the photographs was not substantially outweighed by the risk of unfair prejudice.

We lastly consider Sanchez's argument that the district court abused its discretion by determining that the number of photographs did not amount to a needless presentation of cumulative evidence under Rule 403. Sanchez claims that the sheer number of photographs was impermissible and overwhelmed the jury. At the pre-trial hearing, the district court found:

> [T]he court had originally believed that some of the pictures were cumulative, and it separated those out for discussion today.
>
> However, in the meantime, the state pared the pictures down. And in looking at all of these pictures, and understanding the state's argument on them, the court agrees with the state's statements as to why each of these pictures is necessary.
>
> This child appears to have suffered substantial injuries throughout her body. So one picture or two or three pictures simply doesn't--do not properly show the extent of the injuries.
>
> If this was a case where there was a single injury or one or two injuries, then, obviously, less pictures would be necessary. But we have substantial injuries here. And the state's proposed pictures, the court does not find those to be cumulative but are necessary to show the extent of all the injuries done to the child.

The Idaho Supreme Court has held that a jury is entitled to have a full and complete description of the events surrounding the commission of a crime. *See State v. Windsor*, 110 Idaho 410, 416, 716 P.2d 1182, 1188 (1985). It should be presumed that a person capable of

9

serving as a juror in a murder case can, without losing his or her head, bear the sight of a photograph showing the body of the decedent. *Martinez*, 92 Idaho at 188, 439 P.2d at 696. Sanchez cites to several cases where photographs of a murder victim were admitted at trial. He asserts that, in those cases which mention the number of photographs used, in no prior case has a district court admitted a number of photographs of a decedent comparable to those used in this case. However, this case did not involve a homicide with one, or even a handful of injuries. In this case, the state had the burden of showing that A.A. was murdered by torture. The state had to show that Sanchez inflicted A.A. with pain and suffering over a course of time.

At the time of her death, A.A. had over sixty bruises on her abdomen and more on her back, head, neck and sides; cuts on her ears; a broken arm; a massive skull fracture; internal injuries throughout her abdomen; a severely bruised brain; and several external signs of swelling. The evidence showed that most of these injuries were inflicted over a period of several days. The state argued that these photographs were necessary to show each of these distinct injuries. Certain photographs provide a general view of the body or of a particular area. Other photographs zoom in on specific areas of injury. These close-up photographs were used by the pathologist to demonstrate the aging pattern of some of the injuries, occurrences of recent bruising upon older bruises, and areas of swelling that were not apparent in the general view photographs. A.A. had suffered dozens of injuries, and the use of twenty-eight photographs is not excessive in comparison. The district court properly considered these factors when it found that the photographs in this case were not unduly cumulative. We conclude that the district court did not abuse its discretion by admitting the hospital and autopsy photographs of A.A.'s body.

C.    **911 Recording**

Sanchez argues that the district court erred by admitting a recording of the 911 call placed by his mother. He contends that the recording was irrelevant and that its probative value was substantially outweighed by the danger of unfair prejudice. The state responds that Sanchez did not raise the issue of relevancy below and, thus, has not properly preserved this argument for appeal.

Prior to trial, the state filed a motion in limine concerning, among other things, the admissibility of the 911 recording. At the hearing on the motion, the district court listened to the recording and heard argument from the state and defense counsel. Defense counsel expressed concern over when the tape would be played to the jury and whether it was inadmissible hearsay

or violated Sanchez's confrontation rights. Defense counsel also expressed displeasure at how the recording portrayed Sanchez's mother. However, defense counsel then stated:

> But I believe the State would be able to admit this if it lays a proper foundation and if it provides the witnesses that are involved in that tape for cross-examination. I think they'd have to produce them in their case in chief before the court could actually rule on the admissibility of the tape itself.

The district court clarified:

> [DISTRICT COURT]: Yeah. I assume it's a *Crawford* issue. And if you get beyond the *Crawford* issue, then they'd have to lay the foundation to get the tape in.
> [TRIAL COUNSEL]: That's our position.

Trial counsel made no objection or mention of the recording's relevance. At trial, the 911 recording was admitted and played for the jury without objection.

This Court will not address an issue not preserved for appeal by an objection in the trial court. *State v. Rozajewski*, 130 Idaho 644, 645, 945 P.2d 1390, 1391 (Ct. App. 1997). However, we may consider fundamental error in a criminal case, even though no objection was made at trial. *Id.* Fundamental error has been defined as error which goes to the foundation or basis of a defendant's rights, goes to the foundation of the case or takes from the defendant a right which was essential to his or her defense and which no court could or ought to permit to be waived. *State v. Babb*, 125 Idaho 934, 940, 877 P.2d 905, 911 (1994). We conclude that, even if the admission of the 911 recording was erroneous, it does not rise to the level of fundamental error. Therefore, we do not further address Sanchez's argument concerning the admission of the 911 recording.

## III.

## CONCLUSION

A.A.'s statements made to her mother during recorded telephone conversations were non-testimonial. Therefore, the Confrontation Clause of the Sixth Amendment is inapplicable. The hospital and autopsy photographs of A.A.'s body were relevant and not unduly cumulative. The district court made the requisite balancing of the probative value and prejudicial effect of the photographs. Furthermore, the district court did not abuse its discretion by finding that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice. The relevancy of the recorded 911 call placed by Sanchez's mother was not properly

11

preserved for appeal by objection below and does not rise to the level of fundamental error. Accordingly, Sanchez's judgment of conviction for first degree murder is affirmed.

Judge GUTIERREZ and Judge GRATTON, **CONCUR.**