# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 39573

| | |
|---|---|
| STATE OF IDAHO, | 2013 Unpublished Opinion No. 737 |
| Plaintiff-Respondent, | Filed: November 1, 2013 |
| v. | Stephen W. Kenyon, Clerk |
| NICHOLAS DAVID JOHNSON, aka NICHOLAS DAVID MEEKS, NICK JOHNSON, | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Defendant-Appellant. | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Gregory M. Culet, District Judge.

Judgment of conviction for second degree murder and unified life sentence, with fifteen years fixed, <u>affirmed</u>; order denying Idaho Criminal Rule 35 motion for reduction of sentence, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

WALTERS, Judge Pro Tem

Nicholas David Johnson appeals from his judgment of conviction for murder in the second degree following a jury trial and from the district court's order denying his Idaho Criminal Rule 35 motion. On appeal, Johnson asserts that the district court erred when it admitted several autopsy photographs in evidence without conducting the balancing test required under Idaho Rule of Evidence 403. He also contends that the district court abused its discretion when it imposed a unified life sentence, with fifteen years fixed, and when the court denied his Rule 35 motion in light of new information provided in support of the motion. For the reasons explained below, we affirm.

1

# I.

## FACTS AND PROCEDURAL BACKGROUND

Johnson was charged with murder in the second degree for the stabbing death of Jarmey McCane at the home of Bill and Stacy Kron on June 25, 2011. The stabbing occurred at the end of a party where alcohol had been consumed by the persons present. At trial, testimony of the witnesses to the event showed that McCane, along with his sister and brother-in-law, Stacy and Raymond Lopez, arrived while the party was in progress at the Krons's house. When McCane arrived, Bill Kron introduced him to Johnson as a "good dude," to which Johnson responded, "Nah." Stacy Kron testified that she could feel tension immediately when McCane was introduced to Johnson. Off and on through the evening, Johnson continued to say things to McCane, and McCane would just try to "blow it off" by saying, "Whatever, dude." At one point, Kron moved between Johnson and McCane and held Johnson back from a confrontation with McCane. Johnson continued to engage in this behavior and display animosity toward McCane despite being asked by Kron to stop and "show some respect" to Kron's guests. Around 1:30 a.m., Kron decided he was "done with the situation," so he went to his room, "grabbed a bat," and "told everybody the party . . . was over." Stacy Kron took the bat from him, put it in the garage, and everyone went outside. They were standing in the street in front of the house, except for Johnson who had stayed on the front porch. Kron apologized to the Lopezes and to McCane and McCane apologized to Kron for disrespecting Kron and his home.

While Kron was in the street apologizing to his friends, Johnson went back inside the Krons's house and picked up a large kitchen knife with an eight-inch long blade, which he concealed in his pocket. Johnson returned to the porch and yelled something in a "cocky" tone to which McCane responded, "What?" and started walking toward Johnson. As soon as McCane reached Johnson, Johnson stabbed McCane in the upper chest. McCane grabbed his neck and said, "I think I just got stabbed." He collapsed in the Krons's front yard and died. After the stabbing, Johnson fled to his truck. McCane's brother-in-law, Raymond Lopez, pursued Johnson on foot and punched out the driver's side window of Johnson's vehicle, but Johnson sped away. Johnson fled to his girlfriend's house, changed his bloody shirt, and approximately twenty minutes later, called 911 to report the stabbing. Unbeknownst to him, Raymond Lopez had already called 911. When Johnson called 911, he reported he just stabbed someone, claiming "two people came at [him] and tried to jump [him]" so he "grabbed a knife and stuck one."

When asked for his name, Johnson identified himself as "George Hernandez," and when asked where he was, Johnson hung up. The dispatcher then called back, but Johnson did not answer his phone and the dispatcher got Johnson's voicemail, which said, "Hey this is Nick." The dispatcher called back a second time and Johnson answered. When the dispatcher asked, "Is this George?" Johnson calmly said, "Yes," and he repeated his story that he "stuck" a guy when two men tried to jump him. Johnson also denied knowing the victim, said he was not sure whether the homeowner knew the victim, and said he did not plan to go to jail. When the dispatcher asked whether Johnson was planning to harm himself, he said "hold on" and hung up.

Law enforcement eventually located Johnson in his truck and initiated a traffic stop. The officers observed that Johnson's driver's side window was shattered, there was blood spatter in his truck, and the bloody knife was on the front seat mostly covered by a piece of paper. Johnson was taken into custody at which time it was noted he had no visible injuries and he declined an offer to be examined by paramedics. When interviewed, Johnson again claimed he had been attacked by two guys and said he had the knife because he felt threatened.

The State charged Johnson with second degree murder. Prior to trial, the State filed a motion in limine seeking the admission of photographs taken concerning the crime scene, the victim, and the autopsy. Johnson objected to several of the photographs on the basis that the probative value of the photographs was outweighed by prejudicial effect. The district court explained that its decision on the admissibility of the items was a discretionary call and ruled that one of the photos was admissible but that the court would reserve ruling on the admissibility of the others to see "how the facts of the case are going to tie in." During trial, the court held a hearing outside the presence of the jury at which the forensic pathologist who performed the autopsy testified regarding the relevance of five photographs identified as Exhibits 36, 37, 38, 39, and 40. Johnson objected to these exhibits, arguing the photographs had significant prejudicial effect and had no probative value, in light of the fact that the defense was willing to stipulate to whatever facts the State wanted to put in the record about McCane's autopsy. The court sustained Johnson's objection to Exhibit 36, but allowed the admission of Exhibits 37, 38, 39, and 40.

The jury found Johnson guilty of second degree murder. The district court imposed a unified life sentence, with fifteen years fixed. Johnson filed a Rule 35 motion, which the district

3

court denied. Johnson filed a timely notice of appeal from the judgment of conviction and the order denying his Rule 35 motion.

## II.

## ISSUES ON APPEAL

Johnson poses the following issues on appeal:

A.   Did the district court err when, over Johnson's Rule 403 objection, the court admitted four autopsy photographs without conducting the balancing test required under Rule 403?

B.   Did the district court abuse its discretion when it imposed a unified life sentence, with fifteen years fixed, upon Johnson's conviction for murder in the second degree?

C.   Did the district court abuse its discretion when, in light of the new information provided, the court denied Johnson's Rule 35 motion?

## III.

## DISCUSSION

### A.      Photographs

During Johnson's trial, the State offered in evidence five photographs of McCane's body. The photos were taken at the time of McCane's autopsy and showed the stab wound, including the location; the path and penetration depth of the wound, which measured seven to eight inches; and the fatal injury to McCane's pulmonary artery.  The State asserted that the trajectory and depth of the wound was relevant to match the physical evidence on the body with what actually happened at the scene of the stabbing, demonstrating that the stabbing was not accidental nor an act of self-defense.  Johnson objected to all of these photographs on the ground that they had no probative value because the defense was willing to stipulate to all facts demonstrated by the photos and because the prejudicial effect outweighed the probative value.  The court questioned defense counsel concerning whether the culpability of Johnson was within such a stipulation and whether self-defense remained an issue.  The court was advised that both of those questions remained in issue.  The district court granted the objection as to one photograph, not merely because it tended to be inflammatory, but also because it was cumulative and unnecessary for the identification of McCane as the victim.  The district court overruled the objection as to the other four photographs.

On appeal, Johnson does not question the relevancy of the photographs, but maintains that the district court failed to engage in a balancing test for the admissibility of these exhibits, as

4

required by Rule 403. The rule provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." I.R.E. 403; *see State v. Reid*, 151 Idaho 80, 88, 253 P.3d 754, 762 (Ct. App. 2011) ("Photographs of dead victims are inherently prejudicial. But, before their admission is precluded, they must be unfairly prejudicial."); *State v. Guana*, 117 Idaho 83, 88, 785 P.2d 647, 652 (Ct. App. 1989) ("All probative evidence is, to some extent, prejudicial. The question is whether that prejudice is unfair--that is, whether it harms the defendant not because of inferences which reasonably can be drawn from the facts, but because it inflames the jury and rouses them to 'overmastering hostility.'").

A lower court's determination under Rule 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). Photographic evidence of a homicide victim, duly verified and shown by extrinsic evidence to be faithful representations of the victim at the time in question, is admissible at the discretion of the trial court for proper purposes. *State v. Sanchez*, 147 Idaho 521, 526-27, 211 P.3d 130, 135-36 (Ct. App. 2009) (citing *State v. Martinez*, 92 Idaho 183, 188, 439 P.2d 691, 696 (1968)). Such evidence is properly admitted as an aid to the jury in arriving at a fair understanding of the evidence; proof of the corpus delicti; extent of injury, condition and identification of the body; or for their bearing on the question of the degree of the crime, even though it may have the additional effect of tending to excite the emotions of the jury. *Sanchez*, 147 Idaho at 527, 211 P.3d at 136. Photographs of the body of a homicide victim are not necessarily inadmissible simply because the defendant has admitted some or all of the facts shown thereby. *Id.* (quoting 40A AM. JUR. 2d *Homicide* § 421 (footnotes omitted)).

We disagree with Johnson's contention that the district court failed to engage in the balancing required under Rule 403. At the pretrial hearing regarding the admissibility of the

5

autopsy photos, the district court noted, "The nature and extent of what's admitted is all balanced under what we call Rule 403." The court also explained the need to "balance" the relevance of the photographs against their "inflammatory nature." The district court clearly perceived that it was faced with making a discretionary decision and that the process required the court to decide the admissibility question within prescribed boundaries. *Hedger*, 115 Idaho at 600, 768 P.2d at 1333. At trial, the district court revisited the admissibility of the photographs following testimony from the doctor who performed McCane's autopsy. The court stated:

> I'm ready to make my rulings. Let me first of all apply the standard. . . . [T]his is ultimately a discretionary call on the court. First of all, I looked at, is it relevant. Are there facts at issue in the case that these exhibits and photographs will assist the jury in deciding. And then are they outweighed by cumulative or prejudicial or inflammatory impact that might inflame the passions of the jury.
>
> There are a number of cases where this is addressed by the Idaho Supreme Court and Court of Appeals in the State of Idaho. Most recently is State versus Reid, R-e-i-d. It's a 2011 case from May. 151 Idaho 80 is the Idaho cite, 253 P.3d [754].
>
> Also there's other cases that have come down. . . . State v. Hawkins is 131 Idaho 396. Page 402 addresses the standard which is--and I'm quoting the Idaho Supreme Court from the Hawkins case: "It is well established that where allegedly inflammatory evidence is relevant and material as to an issue of fact, the trial court must determine whether the probative value is substantially outweighed by the danger of unfair prejudice."
>
> It's the discretion of the trial court, and I'm going to quote this court a little farther here, and then I'm going to address . . . another case: The court notes, "The fact that the photographs depict the actual body of the victim and the wounds inflicted on the victim and may tend to excite the emotions of the jury is not a basis for excluding them."

The court thereafter rejected Johnson's argument that the State should be prohibited from "put[ting] on their dog and pony show for the jury" given his willingness to "stipulate to whatever facts they want to put in the record about this autopsy," and the court ruled that Exhibits 37, 38, 39, and 40 would be admitted. The court, however, rejected the admission of Exhibit 36, which was a picture of McCane's face while on the autopsy table, noting that the picture was not necessary for purposes of identification and, although the picture was not particularly graphic or gruesome, the court was concerned about its inflammatory nature. The district court explained its ruling as follows:

> [I]n this instance there is a factual issue before the court of not the cause of death, but the degree of culpability in the cause of death. And that's the, as I understand, the state's relevancy of [these exhibits], is to establish the degree of culpability.

6

And I'm going to permit those exhibits to be admitted, and I'm going to make an admonition to the jury.

Now, Exhibit No. 36, the only point that was offered was to identify Mr. McCane as the person. He's been identified numerous occasions as the person. If you have another photograph that can be identified as the same person, this tends to be inflammatory, and there's no fact at issue that that photo, No. 36, establishes. And I'm concerned about that one. The picture itself is not particularly graphic or gruesome, but I'm concerned about just the inflammatory nature of one that isn't necessary in a trial.

The other exhibits that you have offered, based on the issues before the court, are appropriate--are necessary, and I will advise the jurors about that, and they've been warned about this coming up. So I'll allow those to be--provided you continue to lay the foundation with your witness.

All right. So I've ruled on those, got the arguments. And just noting for the record, just to recapitulate. . . . [T]here is a factual issue that hasn't been stipulated to, and that is the factual issue of the degree of culpability in the crime. And that is reflected--or at least the state's position is that can be determined by the testimony--supported by the testimony of your witness. So that's an issue before the jury for them to consider and the witness to be cross examined on.

These comments demonstrate that the district court reached its discretionary decision to admit the exhibits through an exercise of reason. *Hedger*, 115 Idaho at 600, 768 P.2d at 1333. Johnson's argument to the contrary is without merit. The district court's comments clearly indicate an understanding of the objection and the required analysis of the admissibility of the photographs in light of their "inflammatory" nature, including citation to the appropriate legal standard. The court even warned the jurors they would be shown "somewhat graphic" and "[un]pleasant" pictures but admonished them not to allow the "potential inflammatory nature" of the pictures to "cloud [their] judgment in determining what happens." The court obviously would not give such an instruction had it been unaware of and had failed to consider the prejudicial nature of the photographs in determining their admissibility. Viewed in the context of the record in this case, the admission of the evidence shows the district court determined that the probative value of the exhibits was not substantially outweighed by the danger of unfair prejudice.

Johnson cites *State v. Ruiz*, 150 Idaho 469, 248 P.3d 720 (2010), for the proposition that a trial court must explicate on the record its balancing process required by Rule 403 with regard to the admissibility of evidence. *Ruiz* is readily distinguishable, however. In *Ruiz*, the district court excluded testimony evidence offered with respect to the credibility of a witness, *i.e.*, that the witness (arrested as a co-defendant with Ruiz) had received a favorable arrangement from the

7

prosecutor in the nature of a reduced charge that would allow for probation and insulate the witness from receiving a minimum mandatory sentence, in exchange for the testimony against Ruiz. The district court, to prevent the jury from learning of the mandatory penalty that Ruiz might also face if convicted, simply announced that the evidence concerning the witness' sentence would not be admitted. On appeal, the Idaho Supreme Court vacated Ruiz's conviction and remanded the case for a new trial because the district court had not conducted the balancing analysis required by Rule 403 before excluding the proffered evidence. The Court said:

> "[T]he Rules of Evidence generally govern the admission of *all evidence* in the courts of this State." *State v. Meister*, 148 Idaho 236, 240, 220 P.3d 1055, 1059 (2009) (emphasis in original). "All relevant evidence is admissible except as otherwise provided by these rules or by other rules applicable in the courts of this state." Idaho R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Idaho R. Evid. 401.
>  . . . Evidence that [the witness] would avoid a mandatory three-year prison sentence by testifying against Ruiz was relevant to his credibility. . . . "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Idaho R. Evid. 403. To exclude evidence under Rule 403, the trial court must address whether the probative value is substantially outweighed by one of the considerations listed in the Rule. *Meister*, 148 Idaho at 241, 220 P.3d at 1060. The district court here did not conduct that analysis. It merely said, "You can't talk about minimum mandatories."

*Ruiz*, 150 Idaho at 471, 248 P.3d at 722.

Unlike the instant case, the district court in *Ruiz* failed to state on the record that it recognized it was faced with making a discretionary decision in regard to the balancing test for the exclusion of otherwise admissible evidence under Rule 403; the court did not undertake to make clear its decision within the boundaries that were applicable by engaging in the balancing considerations, and the district court did not utilize or display any exercise of reason in arriving at its decision to exclude the evidence. Here the record amply demonstrates that the district court properly complied with the requirements of Rule 403 by consciously recognizing that the exhibits in question were relevant to the issue of the degree of culpability of the defendant; the court showed it was aware of the need to balance the probative value of the evidence against the danger of unfair prejudice with regard to the exhibits, and the district court explained its rationale

on the record for admitting the exhibits in evidence together with a cautionary admonition to the jury. We hold that no error has been shown on this appeal.

**B.      Sentence**

Johnson asserts that his life sentence, with fifteen years fixed, is excessive in light of the mitigating circumstances present in his case, including his sincere expression of remorse and regret and his lack of any prior felony convictions. Where a defendant contends that the sentencing court imposed an excessively harsh sentence, the appellate court will conduct an independent review of the record, giving consideration to the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). Where a sentence is within statutory limits, the appellant has the burden of showing a clear abuse of discretion on the part of the court imposing the sentence. *State v. Jackson*, 130 Idaho 293, 294, 939 P.2d 1372, 1373 (1997); *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992).

Johnson does not contend that his sentence exceeds the statutory maximum. Accordingly, in order to show an abuse of discretion, Johnson must show that in light of the objectives of criminal punishment, which are the governing criteria, the sentence was excessive considering any reasonable view of the facts. *State v. Stover*, 140 Idaho 927, 933, 104 P.3d 969, 975 (2005). These governing criteria are: (1) protection of society; (2) deterrence of the individual and the public generally; (3) the possibility of rehabilitation; and (4) punishment or retribution for wrongdoing. *Jackson*, 130 Idaho at 294, 939 P.2d at 1373. During Johnson's sentencing proceeding, the district court explicitly acknowledged the application of these criteria.

On appeal, Johnson relies on what he characterizes as "remorse and regret" over McCane's death. Although Johnson apologized and said he was sorry for the event, he continued to refer to his actions as a "mistake that [he] made that ended in absolute tragedy." However, it appears that Johnson's act of obtaining a knife from the Krons's home, concealing it, and then provoking McCane to approach him so he could stab McCane was hardly a mistake. The district court characterized Johnson's conduct as a senseless act, occurring "within a sequence of events [with] an irrational [and] irresponsible decision being made." The court noted that the jury rejected the theory that Johnson acted in self-defense. In fashioning the sentence, the district court expressed concern over the need for the protection of society against recurrence of Johnson's bad judgment.

9

The presentence investigator's report prepared for Johnson's sentencing proceeding shows that Johnson's violent actions on June 25, 2011, were consistent with his history and supports the district court's concern. The report states that a former girlfriend disclosed that Johnson abused her, "[w]as always willing to fight," and "bragged he killed someone with a bat when he was younger." Another individual reported that Johnson "struck [him] in the head and rendered [him] unconscious" after he grabbed Johnson's throat because Johnson would "not stop taunting him." Johnson has a lengthy criminal history that includes juvenile adjudications for disturbing the peace, possession or consumption of alcohol by a minor, petit theft, resisting or obstructing, and minor in possession of tobacco, as well as misdemeanor convictions for possession of a controlled substance, driving under the influence (two convictions), resisting or obstructing (two convictions), providing false information to an officer, willful concealment, and battery (amended from domestic violence). Johnson also has numerous prior driving-related offenses. Notably, when Johnson was charged with McCane's murder, he was awaiting a sentencing hearing on pending charges of domestic battery in the presence of a child and for felony injury to a child.

Although Johnson places blame on the use of alcohol for his actions in stabbing McCane, at trial he was reluctant to accept responsibility for his alcohol use, appearing to blame his alcohol consumption on Bill Kron, claiming Kron "insisted on it." In addition, Johnson has had the benefit of prior treatment, apparently to no avail. Indeed, the doctor who verified Johnson's past treatment noted that although Johnson "made some improvement," he "had a lot of anger." As noted by the district court, even considering the mitigating information in Johnson's case such as his "turbulent childhood" and family support, the "facts of the case warrant the sentence."

We do not find the sentence imposed by the district court to be excessive. We hold that the district court properly exercised its discretion in fashioning an appropriate sentence consistent with the goals and objectives of sentencing.

## C.    Rule 35 Motion

In addition to claiming that his sentence was excessive as imposed, Johnson argues that the district court erred by denying his Idaho Criminal Rule 35 motion. Specifically, Johnson claims his continued pursuit of an education while incarcerated and the fact that he has not received any disciplinary actions while incarcerated should have resulted in sentencing relief.

10

Johnson asserts that the district court abused its discretion when it denied his Rule 35 motion in light of the new information tendered by Johnson.

If a sentence is within applicable statutory limits, a motion for reduction of sentence under Rule 35 is a plea for leniency, and this Court reviews the denial of the motion for an abuse of discretion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). A motion to alter an otherwise lawful sentence may be granted if the sentence originally imposed was unduly severe. *State v. Trent*, 125 Idaho 251, 253, 869 P.2d 568, 570 (Ct. App. 1994). The denial of a motion for modification of a sentence will not be disturbed absent a showing that the trial court abused its discretion. *Id.* The criteria for examining rulings denying the requested leniency are the same as those applied in determining whether the original sentence was reasonable, *i.e.*, consideration of the probable duration of confinement in light of the nature of the crime; the character of the offender; and the objectives of sentencing, which are the protection of society, deterrence, rehabilitation, and retribution. *Id.* If the sentence was not excessive when pronounced, the defendant must later show that it is excessive in view of new or additional information presented with the motion for reduction. *Id.*

Johnson provided information in support of his Rule 35 motion, namely that since his sentencing he was continuing his Structural Fire Science degree "as well as several other programs and classes," and that he had "not received any discipline actions and only continue to focus on the positive opportunities there are to better myself with the resources available." The district court was not persuaded that the additional information submitted by Johnson rose to the level that would support a reduction of Johnson's sentence. The court denied the motion, concluding the original sentence was appropriate considering Johnson's criminal background and history, the opportunities for rehabilitation, and the circumstances in this matter. The court's conclusion was not an abuse of discretion, particularly given the nature of the additional information, which was largely consistent with the mitigating factors Johnson had already presented at the time of sentencing where his educational pursuits and his generally good behavior as an inmate were highlighted. The district court properly exercised its discretion in denying Johnson's Rule 35 motion. We uphold that discretionary decision.

## IV.

## CONCLUSION

The district court did not err in admitting Exhibits 37, 38, 39, and 40. The district court did not impose an excessive sentence and did not abuse its sentencing discretion. The district court did not abuse its discretion by denying Johnson's motion for relief under Rule 35. Accordingly, Johnson's judgment of conviction and sentence, as well as the district court's order denying Johnson's Rule 35 motion, are affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**